22-08/PJG
FREEHILL HOGAN & MAHAR, LLP
Attorneys for TOP UNION (CHINA) LTD.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)
Lawrence J. Kahn (LK    )

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

INDUSTRIAL CARRIERS, INC.,

                              Plaintiff,

          -against-

DAYTON COMMERCIAL LIMITED a.k.a
GALVANIZED STEEL CONSUMERS
ASSOCIATION a.k.a. GSCA a.k.a GSCA LIMITED
a.k.a TOP UNION,

                              Defendant.
-------------------------------------------------------------x

07 CV 7937 (RMB)

**DECLARATION IN
SUPPORT OF MOTION
TO VACATE
ATTACHMENT**

HUANG LIANGJIN, pursuant to 28 U.S.C. §1746, declares and states as follows:

1.    I am a citizen of the People Republic of China and am the Assistant to the

Director of Top Union (China) Ltd. (hereinafter "Top Union China" or "the

Company"), a Chinese corporate entity registered with the Hong Kong

Companies Registry.

2.    In my capacity as the Assistant to the Director, I am the liaison person in Top

Union China who supervises all business correspondence and all business

transactions performed by the Company, and as such, I have personal

knowledge of all transactions performed by the Company, including the matters stated in this Declaration.   I speak and read English fluently.

3.    I submit this Declaration in support of Top Union China's application to vacate the attachment of our funds in the amount of $898,748.74 which was captured as a consequence of the attachment issued in this action.

4.    As the statements below will illustrate, Top Union China has nothing whatsoever to do with this case, the contract involved in this case, any prior contracts involving the parties identified as defendants, or any of other defendants identified in this suit, and our funds have been wrongfully restrained.

**Corporate Background**

5.    Top Union China is a Chinese corporation which was organized and formed in February, 2007.

6.    A copy of our corporate filing with the Hong Kong Companies Register is attached to this declaration as Exhibit 1 and confirms the corporate existence of the company, the resident address of its principal director (Bei Huang) , the company registered address (official) at Unit 801 8/F, Bonham Trade Centre, 50 Bonham Strand, Hong Kong. Our trading address at Yan Ling Road No.248, Tian He District, Guangzhou city, Guangdong province, China.

7.    Top Union China is Chinese company, which is involved, in providing consulting services in international trading (searching for product, connection with suppliers and the clients etc.), investment services and trading in softgoods.

黃良瑾

8.      The subject case, we are advised, involves steel shipments.

9.      As outlined more fully below, Top Union China has never been involved in the shipment of steel, the transportation of steel, the sale of steel, chartering of a vessel(s) to carry steel, the chartering of a vessel(s) to carry anything. We have never hired marine charter brokers for any such purpose and we have never heard of, nor have we ever done business with, any of the other parties identified as defendants in this case or the Plaintiff.

**Circumstances Surrounding the Attachment of Our Funds**

10.     In December, 2007, we received notification from our bank that a wire transfer in the amount of $898,748.74 had been restrained in New York.

11.     We had no idea why our funds were restrained, but were given the name of the Plaintiff's firm, the Tisdale Law Office, as having been involved in the restraint. But we didn't receive any notice from the Tisdale law firm, about fund's attachment we were informed by our Bank.

12.     In an effort to determine why our funds were restrained, we contacted the Freehill Hogan & Mahar firm (Peter Gutowski) who obtained a copy of the pleadings and forwarded them to us and explained the situation.

13.     We then instructed him to make contact with the Tisdale firm to explain that we were not the "Top Union" entity that was involved in these transactions.

14.     In response, it was explained to us by our lawyers (Freehill) that the Tisdale firm would not release our funds because a marine chartering broker involved in the underlying charter transaction, a Singapore-based company called "PacMar Shipping", had told the Tisdale firm that a company called "Top

黄良瑾

Union" was the charterer of two vessel on earlier trips, and that our Hong Kong address matched that of this pervious charterer, who was supposedly an alternative name used by the current defendant in this action, Dayton Commercial Limited.

15. None of this is true, and my Company, Top Union China, has no involvement whatsoever with the transaction which forms the subject matter of this case or any of the companies identified in the complaint.

16. Specifically, I confirm the following:

    (i)    Top Union China has never chartered a vessel for any purpose;

    (ii)    We have never had any commercial dealings, or dealings whatsoever, with any of the other named defendants, including Dayton Commercial Limited, Galvanized Steel Consumers Association, GSCA or GSCA Limited, and in fact, we have never even heard of these other companies

    (iii)    Our company has never been involved in the shipment of steel, which I understand is the cargo that was moved under the subject contract, and the previous charters (which was supposedly performed by some "Top Union" as a pseudo name for Dayton).

    (iv)    We have never hired marine brokers to perform any service for us because we have never chartered a vessel(s), the name of the broker, PacMar Shipping, was completely unknown to us, as was the broker who PacMar Shipping had identified to the Tisdale firm as being our broker in the previous transactions, Neva-Delta Shipping Agency.

黃良瑾

   (v)  Our company has never owned a vessel.

17. In a further effort to determine why our Company's funds had been frozen, we asked our New York counsel, Freehill Hogan & Mahar, to contact the Tisdale Law Offices for information about the underlying contract, and the supposed previous contracts where some company called 'Top Union" was the charterer.

18. In response, we were advised that the Tisdale firm had informed the Freehill firm that the reason why "Top Union" was identified was because in the "fixture recap" (a term we had never heard of before), there was a statement that two prior contracts had been performed in the name of a "Top Union", and this was a name Dayton also supposedly used. We were provided with a copy of this "fixture recap" (which is annexed as Exhibit 2). It states that a "Top Union" performed two prior contracts for the vessels Manas and Navios Heracles..

19. This is the first time we had ever seen this document.

20. We were not the prior charterer of the vessel described therein, and indeed had never seen such a type of contract, or heard the term "fixture" before.

21. It was explained to us that the Plaintiff's broker, PacMar Shipping, had told the Tisdale firm that the "Top Union" mentioned in this fixture contract was located at our address in Hong Kong, and it was on that basis that they would not release our funds, claiming that as a prior charterer and pseudo name for the defendant Dayton, we were liable and our funds could be frozen.



22. In an effort to demonstrate that the Plaintiff had targeted and frozen assets of the wrong company, I contacted this broker PacMar Shipping directly last week, and had several conversations with Connie Lim.

23. Ms. Lim speaks fluent Chinese and these conversations were in Chinese.

24. I explained to her the situation, that we were not the "Top Union" involved in these transactions and asked her to advise how it was that she had provided the Plaintiff's counsel with our address.

25. I also asked her to secure information regarding these prior contracts with this other "Top Union" entity, and to determine and advise us who had paid for that transportation in those contracts so we could establish that it was not us.

26. My email, dated January 16, 2007, confirming my initial telephone call is attached as Ex. 3.

27. Ms. Lim confirmed that she would investigate how it was that they had provided to the Tisdale firm our address and who it was that had the prior transactions, where they were located, and who had paid the money to the Owners in those previous shipments.

28. She was not sure, at the time of the first call, where they had even come up with the information tying our Company to these earlier contracts.

29. I copy of her email acknowledging my inquiries is attached as Ex. 4.

30. I followed up with Ms. Lim several times, and spoke with her earlier this week on January 21, 2008.

31. During that conversation, she confirmed to me that based upon her investigation, PacMar Shipping had identified the wrong Top Union to the

6

Tisdale office, our Company was not the party that had previously chartered the vessels, and we did not pay the transportation charges for that other shipment.

32. For the Court's guidance, if one enters the Hong Kong Companies Directory and searches for companies that begin with the name "Top Union" you will find at least 50 companies here with that initial name (active and dissolved).

33. I have no idea how Ms. Connie Lim (PacMar Shipping) came upon our address and why it is that she initially provided that address to the Tisdale firm (assuming she did) as the basis upon which they have been holding our money, but in any event, we are certainly not the company that previously chartered any vessel for the carriage of steel, we have never chartered a vessel, we are not involved in ocean shipping, and consider it an abuse for the plaintiff to have frozen our money on such false and unsupported evidence.

34. Based upon the foregoing, we respectfully ask this Court to vacate the attachment against our funds and hold the Plaintiff accountable for all the fees, expenses and costs that we have incurred in having to make this application.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: Executed on January 23, 2008 at
Guangzhou city, Peoples Republic of China

黄良瑾

_____
HUANG LIANGJIN

NYDOCS1/297661.1                    7

# EX. 1



首任秘書及董事通知書
**Notification of First Secretary and Director**



公司註冊處
**Companies Registry**

(公司條例第 158(4) 及 (4A) 條)
(Companies Ordinance s. 158(4) & (4A))

表格 Form **D1**

**重要事項 Important Notes**

* 填表前請參閱《填表須知》。
  請用黑色墨水列印。
* Please read the accompanying notes before completing this form.
  Please print in black ink.

公司編號 **Company Number**

**1106572**

**1 公司名稱 Company Name**

TOP UNION (CHINA) LIMITED
滙高(中國)有限公司

**2 秘書 Secretary** (如超過一名秘書，請用續頁A填報 Use Continuation Sheet A if more than 1 secretary)

**A. 個人秘書 Individual Secretary**

| 中文姓名 Name in Chinese | |
|---|---|

| 英文姓名 Name in English | |
|---|---|
| | 姓氏 Surname | 名字 Other Names |

| 前用姓名／別名 Previous Names / Alias | |
|---|---|
| | 前用姓名 Previous Names | 別名 Alias |

(註 Note 8) 香港住址 Hong Kong Residential Address

(註 Note 9) 電郵地址 E-mail Address

(註 Note 10) 身份證明 Identification

a 香港身份證號碼 Hong Kong Identity Card Number

b 海外護照 Overseas Passport

簽發國家 Issuing Country    號碼 Number

委任日期 Date of Appointment

日 DD    月 MM    年 YYYY

(註 Note 6) 提交人的資料 **Presenter's Reference**

姓名 Name: R & R Professional Accounting Limited

地址 Address: Unit 801, 8/F, Bonham Trade Centre, 50 Bonham Strand, Hong Kong

電話 Tel: 2815-8226    傳真 Fax: 2815-8236

電郵地址 E-mail Address: rchan@rracct.com.hk

檔號 Reference:

指明表格 2/2004 (修訂) (2004 年 2 月)
Specification No. 2/2004 (Revision) (Feb. 2004)

請勿填寫本欄 For Official Use


收件日期 RECEIVED
2 6 FEB 2007
文件收發小組
Central Mail Unit

```
22000202513
D1              1106572
26/02/2007
```

表格 **Form** **D1**

公司編號 Company Number

1106572

2  秘書 Secretary  (接上頁 cont'd)

(註 Note 11)  **B. 法人團體秘書 Corporate Secretary**

(註 Note 12)  中文名稱
Name in Chinese

(註 Note 12)  英文名稱
Name in English

(註 Note 13)  香港地址
Hong Kong
Address

(註 Note 9)  電郵地址
E-mail Address

公司編號 Company Number
(只適用於在香港註冊的法人團體)
(Only applicable to body corporate registered in Hong Kong)

委任日期 Date of Appointment

| 日 DD | 月 MM | 年 YYYY |

第二頁 Page 2

指明表號 2/2004 (修訂) (2004年 2月)
Specification No 2/2004 (Revision) (Feb. 2004)

表格 **D1**
Form

公司編號 **Company Number**

1106572

3  董事 **Director**

A.  個人董事 **Individual Director**
(如超過兩名個人董事，請用續頁 B 填寫   Use Continuation Sheet B if more than 2 individual directors)

*在有關空格內加 ✓ 號  Please tick the relevant box(es)*

| (註 Note 14) | 1 | 身份<br>Capacity | ☑ 董事<br>Director | ☐ 後補董事<br>Alternate Director | 代替 Alternate to |
|---|---|---|---|---|---|

中文姓名
Name in Chinese

黃蓓

英文姓名
Name in English

| HUANG | Bei |
|---|---|
| 姓氏 Surname | 名字 Other Names |

前用姓名
Previous Names

N/A

別名
Alias

N/A

(註 Note 15)  住址
Residential
Address

No. 1503 Building 3, Chongwenmen West
Street, Dongcheng District, Beijing

China

國家 Country

(註 Note 16)  電郵地址
E-mail Address

N/A

(註 Note 17)  身份證明 **Identification**        China ID No.:150204197709051229
a  香港身份證號碼
Hong Kong Identity Card Number

N/A

b  海外護照
Overseas Passport

| N/A | N/A |
|---|---|
| 簽發國家 Issuing Country | 號碼 Number |

委任日期 Date of Appointment

| 2 6 | FEB 2007 | |
|---|---|---|
| 日 DD | 月 MM | 年 YYYY |

指明招數 2/2004 (修訂) (2004 年 2 月)
Specification No. 2/2004 (Revision) (Feb. 2004)

第三頁 Page 3



表格
Form **D1**

公司編號 Company Number

| 1106572 |

3  董事 Director (接上頁 cont'd)

在有關空格內加 ✓ 號  Please tick the relevant box(es)

(Note 14)  2  身份
Capacity

☐ 董事
Director

☐ 候補董事
Alternate Director

代替 Alternate to

中文姓名
Name in Chinese

英文姓名
Name in English

姓氏 Surname          名字 Other Names

前用姓名
Previous Names

別名
Alias

(Note 15)  住址
Residential
Address

國家 Country

(Note 16)  電郵地址
E-mail Address

(Note 17)  身份證明 Identification
a  香港身份證號碼
Hong Kong Identity Card Number

b  海外護照
Overseas Passport

簽發國家 Issuing Country          號碼 Number

委任日期 Date of Appointment

日 DD          月 MM          年 YYYY

第四頁 Page 4

指明規格 2/2004 (修訂) (2004 年 2 月)
Specification No. 2/2004 (Revision) (Feb. 2004)

表格
Form **D1**

3 董事 Director  (續上頁 cont'd)

**B. 法人團體董事 Corporate Director**
(如超過一名法人團體董事，請用續頁 C 填報  Use Continuation Sheet C if more than 1 corporate director)

在有關空格內加 ✓ 號  Please tick the relevant box(es)

| | | |
|---|---|---|
| ; Note 14) | 身份<br>Capacity | ☐ 董事<br>Director  ☐ 候補董事<br>Alternate Director | 代替 Alternate to |

中文名稱
Name in Chinese

英文名稱
Name in English

; Note 18)  地址
Address

國家 Country

; Note 16)  電郵地址
E-mail Address

公司編號 Company Number
(只適用於在香港註冊的法人團體)
(Only applicable to body corporate registered in Hong Kong)

委任日期 Date of Appointment

日 DD    月 MM    年 YYYY

本通知書包括 _____ 張續頁 A，_____ 張續頁 B 及 _____ 張續頁 C。

This Notification Includes ___Nil___ Continuation Sheet(s) A, ___NIL___ Continuation Sheet(s) B and ___Nil___ Continuation Sheet(s) C.

簽署 Signed :

姓名 Name :  HUANG Bei            日期 Date :  2 6 FEB 2007

董事 Director／秘書 Secretary*            日 DD  ／  月 MM  ／  年 YYYY

*請圈去不適用者 Delete whichever does not apply

說明規訊 2/2004 (修訂) (2004 年 2 月)
Specification No. 2/2004 (Revision) (Feb. 2004)



**公司註冊處**
**Companies Registry**

出任董事或候補董事職位同意書
**Consent to Act as**
**Director or Alternate Director**

(公司條例第 158(5)條)
(Companies Ordinance s. 158(5))

表格
Form **D3**

**重要事項  Important Note**

● 請用黑色墨水列印。
  Please print in black ink.

公司編號 Company Number

**1106572**

**公司名稱 Company Name**

TOP UNION (CHINA) LIMITED
滙高(中國)有限公司

本人
I,

**HUANG Bei 黃蓓**

(請填報姓名 Please state full name)

同意出任上述公司的
consent to act as the above company's

請在有關的空格內加 ✔ 號 Please tick the relevant box(es)

☑ 董事，
  Director

☐ 候補董事，    代替 Alternate to
  Alternate Director

(請填報代替存任的董事姓名或名稱 Please state full name of the principal director)

生效日期為          **26 FEB 2007**          ，並確認本人已年滿十八歲。
with effect from                                     , and confirm that I have attained the age of 18 years.
                    日 DD    月 MM    年 YYYY

簽署 Signed :

日期 Date :          **26 FEB 2007**
                    日 DD  /  月 MM  /  年 YYYY

**提交人的資料 Presenter's Reference**

姓名 Name : R & R Professional Accounting Limited

地址 Address: Unit 801, 8/F, Bonham Trade Centre,
              50 Bonham Strand, Hong Kong

電話 Tel: 2815-8226        傳真 Fax: 2815-8236

電郵地址 E-mail Address:   rchan@rracct.com.hk

檔號 Reference:

指明格式 2/2004 (註訂) (2004 年 2 月)
Specification No. 2/2004 (Revision) (Feb. 2004)

**請勿填寫本欄 For Official Use**

收件日期 RECEIVED
**26 FEB 2007**
 文件收發小組
Central Mail Unit

22000202514
D3
26/02/2007          1106572

**APOSTILLE**

(Convention de La Haye du 5 octobre 1961)

1. Country:  Hong Kong, China
   This public document
2. has been signed by  WONG Kar-wing Winnie
3. acting in the capacity of  Registrar of Companies
4. bears the seal/stamp of  Registrar of Companies Hong Kong

                                    Certified

5. at  High Court                        6. the  07 MAR 2007
7. by  Christopher C. Chan
       Registrar, High Court
8. No  3096 / 2007
9. Seal/stamp                            10. Signature:

I certify that this is a true copy of the document
《(Ref. No.: 22000202513 & 22000202514, Page 1 of
6)》 kept and registered at the Companies Registry.
本人謹此核證: 此文件《參考編號: 22000202513 &
22000202514, 第1頁, 共6頁》為真正副本;正本已在
公司註冊處登記及備存紀錄.



Miss Winnie K. W. WONG
for Registrar of Companies
公司註冊處處長
(黃家穎 代行)
05-MAR-2007
二〇〇七年三月五日



Page 1 of 1

# EX. 2

*MV Alexis Recap.*

# FIXTURE RECAP

M/V 'ALEXIS' (EX - MANA)
---
T Y P E   : SINGLE DECK " SELF TRIMMING"  BULK CARRIER
B U I L T  : 12/1981
Y A R D   : CCN MAUA, BRAZIL
F L A G   : MALTA
PORT OF REG : VALLETTA
CALL SIGN  : 9 H Q V 6
I M O . N O : 7433074
C L A S S  : HIGHEST B.V. - MALTESE CROSS E, BULK CARRIER ESP,
        HEAVY CARGO, HO.3 MAY BE EMPTY, UNRESTRICTED NAVIGATION.

SUMMER DWT  / DRAFT : 26,060 MT / 9.75 M
WINTER DWT  / DRAFT : 25,281 MT / 9.55 M
TROPICAL DWT / DRAFT : 26,684 MT / 9.95 M

LOA / BREADTH EXTR.  : 173.15 M  / 26.66 M
LBP / DEPTH MOULDED  : 162.04 M / 13.50 M
T.P.C. / T.P.I.    : 38.45 MT / 97.66 MT
CONSTANTS (EXCL FW)  :   450 MT

INTERNATIONAL GT / NT : 16,598 / 10,093
S U E Z    GT / NT : 16,857 / 14,000
P A N A M A   GT / NT : 17,599 / 13,108

G R A I N  CAPACITY  : 1,202,041 CFT IN CLEAR UNOBSTRUCTED MAIN HOLDS ONLY
B A L E   CAPACITY  : 1,131,428 CFT

-VSL IS GRAIN / EVAPORATOR FITTED / AHL FITTED.
-VSL IS SUITABLE FOR GRAB DISCHARGE.
-VSL HAS TEL / FAX ONBOARD : 763455542 / 763455543

HOLDS / HATCHES    : 5 / 5
HATCH COVERS     : MCGREGOR FOLDING TYPE, HYDRAULICALLY OPERATED

G E A R  / LOCATION  : 4 CRANES X 25 MT (LIEBHERR TYPE B)
        BETWN HOLDS 1-2  -  1 CRANE X 25 MT
        BETWN HOLDS 2-3  -  1 CRANE X 25 MT
        BETWN HOLDS 3-4  -  1 CRANE X 25 MT
        BETWN HOLDS 4-5  -  1 CRANE X 25 MT
        (MAX.OUTREACH OVERSIDE AT FULL LOAD ABT 8.00 M)

HATCH DIMENSIONS
------------------
NO.1  12.57 M  X  11.36 M
NO.2  19.63 M  X  16.50 M
NO.3  12.42 M  X  16.50 M
NO.4  19.90 M  X  16.50 M
NO.5  19.90 M  X  16.50 M

1

HOLDS DIMENSIONS
--------------------

|       | LENGTH | WIDTH FORE | WIDTH AFT | HEIGHT |
|-------|--------|-----------|-----------|--------|
| HO.1  | 16.80 M | 5.90 M   | 17.50 M   | 11.80 M |
| HO.2  | 27.10 M | 17.50 M  | 21.10 M   | 11.80 M |
| HO.3  | 15.70 M | 21.10 M  | 21.10 M   | 11.80 M |
| HO.4  | 28.20 M | 21.10 M  | 21.10 M   | 11.80 M |
| HO.5  | 27.30 M | 21.10 M  | 15.60 M   | 11.80 M |

STRENGTHS
---------

TANK TOP   : 15.00 MT/M2
MAIN DECK  : 2.85 MT/M2
HATCHCOVERS : 1.75 MT/M2

GRAIN BREAKDOWN          BALE BREAKDOWN
-----------------       ---------------

| GRAIN | | BALE | |
|-------|---|------|---|
| HO.1 = | 129,252 CFT | HO.1 = | 121,977 CFT |
| HO.2 = | 289,580 CFT | HO.2 = | 272,841 CFT |
| HO.3 = | 191,441 CFT | HO.3 = | 178,728 CFT |
| HO.4 = | 305,578 CFT | HO.4 = | 287,124 CFT |
| HO.5 = | 286,190 CFT | HO.5 = | 270,758 CFT |
| TOTAL = | 1,202,041 CFT | TOTAL = | 1,131,428 CFT |

ALL DETS ABT + WOG

Account: DAYTON COMMERCIAL LIMITED, 90-100 Sydney Street, Chelsea GB London SW3 6NJ (former GSCA Ltd. London UK), NORDEA BANK DANMARK A/S, Meldahlsgade 1 1613 Copenhagen V Dehmark, bank account DK8420005036170494.

Last fixtures under account Top Union:
- m/v Manas, steel coils Changshu+Qingdao/St.Petersburg, disp ows: Paksu Shipping, Istanbul
- m/v Navios Heracles, steel coils Changshu+Dalian/St.Petersburg, disp ows: Hyndai Merchant Marine

Last fixtures under account GSCA:
- m/v Thermopylae Sierra, steel coils Changshu/St.Petersburg - disp owns: Thesarco
- m/v Vinashin Iron, steel coils Dalian+Qingdao/St.Petersburg - disp owns: Industrial Carrieres inc
- m/v Federal Mackinac, steel coils Xingang+Dalian+Changshu/St.Petersburg disp owners: Fednav International ltd

- cargo is steel sheet in coils, dim: diameter 900 - 1150 mm, length 1265 mm, weight max 7,5 mt, average 5,5 mt. Packing list to be provided.
- cargo 22,000 10 PCT MORE OR LESS in OWNERS OPTION: 15,000 mt to be stowed in 3 tiers max, plus 3,000 mt (ready by May, 20) could be stowed in 3 tiers plus 5,500 mt (ready by May, 25) could be stowed in 4 tiers or in owners option 3,000 mt (ready by June, 1) could be stowed in 4 tiers

2

- LOAD 1GSB DALIEN / DISCH 1-2 GSB ST PETERSBURG WHERE CHS GTEE DRAFT 9.80 m, LOA -185 M

- LAYCAN 20-26 MAY 2007

- L/D RATE: CQD bends

- Charterers AGENT BENDS
  Dalian -
      China Ocean Shipping Agency(Dalian) Co., Ltd. (Penavico Dalian)

      Contact person : Mr. Zheng Hong Hai
      Tel:86-0411-82513808

  St.Petersburg -
      Astra shipping agency
      tel +7 812 713 04 00
      fax +7 812 314 65 98
      e-mail: agency@wcharter.spb.ru

- On fixing main terms owners to furnish valid copies of class, registration, P&I and hull/machinery and ism certificates for the duration of the intended voyage and advise vessels P&I correspondents at load and disport on fixing main terms.

Owners warrant that during the currency of this c/p:
- vessel is suitable to accommodate the full cargo as per given description and in all respects suitable for loading/ discharging of the contracted cargo.
- vessel/holds to be in every respect ready for loading of the designed cargo, if subsequently same found not ready time lost for preparation and expenses to be for owners account
- owners confirm that no obstructions or center line bulk heads inside the vessel holds.
- owners/master to be responsible for number of coils signed for
- vessel shall not change ownership and/or class without Charterers written consent. class will be fully maintained during the currency of this charter party.
- vessel will not be sold/scrapped or redelivered during currency of this contract.
- vessels hull and machinery insurance shall be fully maintained and will not be changing
- vessel is fully P&I covered and same shall be maintained
- vessell is fully ITF fitted.
- vessel is in all respects suitable for loading of the cargo as stated above.
- vessel to be suitable for draft survey both ends.
- vessel /owners to comply with and satisfy themselves of all limits/restrictions including loa/beam/draft/airdraft, etc at load and discharge ports during whole duration of voyage.
- vessel to sail directly from load port to discharge port
- owners do not have the option to relet this cargo

- Owners warrant that this ship is staunch and is in every way fitted for the voyage and to carry steel cargoes, will maintain highest class Lloydss Register of equivalent P&I Club membership and seaworthiness, throughout the duration of this contract, will not be sold and change ownership, and will not drydock and that specifically the gear, ventilators/hatches/covers/coamings/gaskets are in perfect working order and condition.
- Should Charerers surveyor detect any deficiencies regarding this ships equipment upon commencement of loading operations, in particular with respect to the tightness of the hatch covers, then the Master is obliged to rectify those shortcomings prior to sailing. If required, the vessel shall

3

furnish a certified calibration scale for all tanks, including fore and aft peaks, double bottom tanks and deeptanks, if any. Plimsoll marks amidship and draft marks both on port and starboard side to be clearly marked on shell plating and Master to certify correctness of same.

- Lashing/securing/dunnage materials to be for Charterers account at all ends.
Lashing/securing/dunnage TO BE PERFORMED/PROVIDED ACCORDING TO GOOD MARINE PRACTICE

- FREIGHT UAD 116.50 PMT FIOS

-Freight fully paid on signing/release of Bills of Lading as per Bills of Lading weight to Owners nominated bank account free of any bank charges within 7 banking days.

-Full freight deemed earned on completion of loading and is due discountless and non-returnable ship/cargo lost or not lost

- Bills of Lading to be marked as "FREIGHT PREPAID" and to be released after receipt of 100% freight payment.

- Owners to authorize Charterers to issue Bills of Lading in accordance with mates receipts Bills of Lading remarks, if any, to be put in attached list only , Owners to put in Bills of Lading "remarks as per attachment"

-Bills of Lading of Congenbill 94 to be issued.

-All remarks to the B/L , if would be, should be indicated in attachment

-Charterer can change receiver's name in B/L before arrival,but this to be declared at least one week before previously all set of original B/L will sent to owns office by courier after owns will give authority for new set bs/l to be issued.

-Goods' description in the cargo documents to follow Shippers/Charterers instructions

-Master has no right to reject any cargo. M/R remarks, if any, to be specific and cargo related only and to be announced latest 3 hours prior to completion of loading so to enable Shippers to verify the Masters observations.

-Before commencement of loading/discharging Master to tender stowage plan to Agents.

-The cargo to be loaded, stowed by the Shippers stevedores free of expenses to the vessel, under deck basis Customary Quick Despatch. No demurrage/no despatch

-The cargo to be discharged free of expense to the vessel basis Customary Quick Despatch. No demurrage/no despatch.

- DETENTION USD 30,000 PDPR

-Detention to apply in case:
at load port:
a) cargo is not ready for shipment
b) customs/export documents not in order
c) negligence of stevedores

4

at discharge port:
a) customs/import documents are not in order
b) negligence of stevedores

- Upon completion of loading, the Master to cable or fax to the Agents at the discharging port the quantity loaded, expected draft on arrival followed by 72 and 48 hours approximate and 24 hours definite notice of E.T.A. Furthermore Owners to tender all above notices to Charterers via brokers

- In case of original Bills of Lading are not available on vessels arrival at discharging port owners/master to discharge the cargo immediately upon arrival into custody of the port and the cargo to be released to receivers against presentation of original Bills of Lading or Charterers Letter of Indemnity (LOI) in Owners P&I wording.

- Any taxes/dues on cargo to be for Charterers account, same on vessel/crew and freight, if any (including normal disbursement account/wharfages) even if calculated on cargo base, to be for Owners' account.

- Owners/Vessel to be responsible for number of coils loaded and as signed for in the Bills of Lading

- Compulsory tally to be for Owners acct, otherwise tally to be for account of party ordering same

- Owners/master to tender to Charterers 10/8/6/4 days approximate and 3/2/1 day(s) definite notices of arrival at load/discharge port to enable Charterers/Shippers/Receivers to get cargo/documents ready accordingly

- Owners/Master to guarantee 18,000 mt cargo to be stowed max 3 tiers, balance cargo can be stowed in 4 tiers.

- All vessel shifting alongside berth to be for Owners account

- The vessel is not blacklisted in any country. Any consequences/expenses incurred to the Shippers/Receivers/Charterers in case a boycott should be imposed or other difficulties should arise due to the vessel's age/flag/class/Ownership or nationality of the officers and/or crew, shall be borne by the Owners.

- The Stevedores, although appointed by Charterers, Shippers or Receivers or their Agents to be under the direction and control of the Master. Charterers, Shippers, Receivers shall not be responsible for the act and default of the Stevedores at the loading and discharging ports. All claims for damages to the vessel occurred during loading and discharging operations and the voyage because of improper or negligent stowage of the cargo to be settled directly between Owners and Stevedores without recourse against Charterers, Shippers or Receivers. Master to notify Stevedores of damages, if any, in writing latest 24 hours after occurrence. Any time occupied in repairing damages not to count as laytime.

- Time lost by reason of all or any of the following causes shall not be computed in the loading or discharging time, viz.: War, rebellion, tumults, civil commotions, insurrection, political disturbances, epidemics, quarantine, riots, strikes, stoppages of workmen, lightermShipping & Chartering tugboatmen, or other hands essential to the working, carriage, delivery, shipment, or discharge of the said cargo whether partial or general, or accidents at the mines at Receivers' work

5

or wharf landslips, floods, frost or snow, bad weather, intervention of sanitary, customs and/or other constituted authorities, partial or total stoppage on rivers, canals or on railways or any other cause beyond control of the Charterers.

- The ship to work at night and overtime if requested to do so. The overtime expenses are for account of the party ordering same Officers' and crew's night time/overtime always to be for Owners' account.

- Opening and closing of hatches, even if intermediate, to be for Owners' account

-The vessel to supply at all times free of expense to the Charterers, light as on board, if required, and same to be in good working order.

-The Captain shall close the hatch of each hold as soon as the loading into same has finished, and also all hatches when the loading or discharging has finished for the day, he shall also during rain and snow close up all hatches by which loading or discharging is not actually going on.

- Throughout the duration of this charter-party owners shall   always give free use of all vessels cargo gear, winches and / or  motive power for loading and/or discharging to operate all cargo handling gear simultaneously at all times, if requested by shippers/receivers/charterers.

- The Owners confirm and guarantee that the vessel is classed highest Lloyds or equivalent (acceptable as such to Charterers' Insurance Comp.), P and I covered for Hull and Machinery and cargo claims and has been insured for the duration of this Charter Party.

- The Owners confirm and guarantee that the vessel is suitable and accepted for the trade she has been fixed for under this Charter Party and accepting any consequences/costs resulting from any problem/delay.

- Vessel's holds to be clean and dry before commencement of loading at Shipper's satisfaction, which must not be unreasonable otherwise time not to count. In case of dispute an independent Surveyor will be appointed and his decision being binding upon all parties. The Owners guarantee that the vessel has clear holds without obstacles or angle bars and that she is suitable for loading the cargo for which she has been fixed for. No cargo shall be loaded into deeptanks or other difficult accessible places. Stevedores, although appointed and paid for by the Charterers/Shippers/Receivers are considered to be the servants to the vessel and are to work under the direction of the Master who will be responsible for proper stowage and the seaworthy trim of the vessel. Shippers and/or Receivers shall have the option to use forklifts in all compartments and Owners to warrant that the vessel is suitable to allow forklift operation.

- Both-to-blame collision clause to apply General Average and New Jason clause to apply

- Responsibility on number of pieces notwithstanding anything elsewhere contained in this C/P, Owners and Master are responsible for the delivery of the number of pieces and/or packages loaded and signed for in BS/L and so hereby liable for all losses resulting from short delivery of the pieces and/or packages towards Charterers, Receivers or any third party which may be legally representing them. Owners are to settle promptly any such claims provided same are supported by relevant documentation, but in any case latest within 30 (thirty) days of Owners receipt of same. Shortdelivery claims, which are not presented within 24 (twenty-four) months from the date of departure of the vessel from the respective port of discharge, are to be waived and barred.

6

- TALLYSHEETS TO BE PRESENTED TO THE MASTER AND TO BE SIGNED BY THE MASTER BOTH ENDS

- This Charter Party shall be governed by and construed in accordance with English Law and any dispute arising out of this Charter Party shall be referred to arbitration in London

- One Arbitrator being appointed by each party

- On the receipt by one party of nomination in writing of the other party's Arbitrator, that party shall appoint their Arbitrator within 14 days, failing which the decision of the single Arbitrator appointed shall apply. If two Arbitrators properly appointed shall not agree they shall appoint an Umpire whose decision shall be final.

- Both Parties confirm that all negotiations and eventual fixture must be kept private and confidential and not to be reported to 3rd parties

- Whilst on passage, Master is to ensure that vessels ventilation system, be it natural or mechanical is functioning properly so as to minimize the potential for atmospheric rust which might occur due to condensation in the holds.

- NO COMMISSION HERE.

- OTHERWISE AS PER C/P VINASHIN IRON DD 1 FEBRUARY 2007

7

# EX. 3

From:?**<huang_liangjin@sina.com>**
??
Date:?**16-01-08,**?Time:?**02:41:52**
??
Subject:??**from?top?union?china?ltd.**
??
??

??
?
??
Dear?Ms.?Connie?Lim,
??
I?called?you?yesterday,?I'm?Huang?Liang?Jin?from?Top?Union?(China)?Limited.
??
For?your?better?understanding?I?will?explaine?you?the?present?situation.?Our?company?received?the?
claim?from?Tisdale?company?concerning?maritime?case.?But?we?don't?know?this?company?and?even?
don't?know?anything?about?shipping?staff.?This?claim?is?based?on?information,?which?were?received?by?
Ada?Chartering?from?you,?and?specifically?based?on?fixture?note?for?vesel?Manas.?
??
But?we?do?know?nothing?about?this?contract?and?we?didn't?sign?this?contract.
??
If?such?contract?really?exist?,?please?advise?us?who?signed?that?contract?on?behalf?of?our?company?
Top?Union?(China)?Limited?and?who?paid?according?to?that?contract.
??
We?consider?that?some?mistakes?or?misleadings?happened?because?there?are?many?companies?with?
the?name?Top?Union.
??
Please?except?our?apology?for?disturbing?you,?but?this?information?is?very?important?to?us.?We?
appreciate?your?supplying?of?information?
??
Best?regards,
??
Huang?Liangjin<=""> ??

        ??
        ?< DIV>


------------------------------------------------------------------
????????????????¬??????"??????????????""?¡§"(?
http://d1.sina.com.cn/sina/limeng3/mail_zhuiyu/2008/mail_zhuiyu_20080114.html?)

# EX. 4

*REF:?231990@-LIM?16-01-08/10:44:44*
**PACMAR??SHIPPING??PTE??LTD?-?? ?SINGAPORE?**
**Tel:?(65)?? 6221-3608?????Fax:?(65)??6221-3975??????Telex:?RS?33165?**
**E-Mail:?dry@pacmar.com.sg??**
?
?


dear?miss?huang,
?
noted?yrs,?shall?check?with?the?owners?and?? revert.
?
best?regards
connie
?
?


??
??