UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
INDUSTRIAL CARRIERS INC.,                  :
                                           :
                Plaintiff,                 :
                                           :        07 CV 7937 (RMB)
      - against -                          :        ECF CASE
                                           :
DAYTON COMMERCIAL LIMITED a.k.a.           :
GALVANIZED STEEL CONSUMERS                 :
ASSOCIATION a.k.a. GSCA a.k.a.             :
GSCA LIMITED a.k.a. TOP UNION,             :
                                           :
                Defendant.                 :
------------------------------------------------------------X

## PLAINTIFF INDUSTRIAL CARRIERS INC.'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO VACATE MARITIME ATTACHMENT

TISDALE LAW OFFICES, LLC
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 254-0025 - Phone
(212) 869-0067 - Fax

*Attorneys for the Plaintiff,*
Thomas L. Tisdale, Esq.
Lauren C. Davies, Esq.

## INTRODUCTION

Plaintiff, Industrial Carriers Inc. ("ICI" or "Plaintiff"), by and through its undersigned counsel, Tisdale Law Offices, LLC, respectfully submits this Memorandum of Law in Opposition to Defendant, Top Union (China) Limited's ("Top Union"), Motion to Vacate the maritime attachment issued pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"). Defendant's Motion to Vacate should be denied because: (1) Plaintiff has sustained its burden herein to establish that it has restrained property belonging to the Defendant Top Union; and (2) Plaintiff has satisfied the requirements of Rule B in all other respects.

## FACTS

The facts pertaining to the instant Motion to Vacate the process of maritime attachment and garnishment as against Top Union are more fully set forth in the accompanying Declaration of Thomas L. Tisdale dated February 6, 2008 (hereinafter "Tisdale Decl."). The facts stated in the Declaration are incorporated by reference herein. In addition, this Memorandum of Law will make reference to, and discuss as necessary, the facts set forth in the Declaration.

## ARGUMENT

### POINT I
### PLAINTIFF HAS SATISFIED ITS BURDEN OF PROOF
### UNDER SUPPLEMENTAL ADMIRALTY RULES B AND E(4)(f)

Rule B "permits a plaintiff to attach an absent defendant's property if the plaintiff has an admiralty or maritime claim *in personam*." *Reibor Int'l Limited,* 759 F.2d 262 (2d Cir. 1985); *see also, Aqua Stoli v. Gardner Smith Pty Ltd.,* 460 F.3d 434, 445 (2d Cir. 2006). Quasi *in rem* process can be used to attach or garnish a wide variety of tangible and intangible property. "In addition to tangible property, service of quasi *in rem* process can also be used to reach a variety

of intangible property, such as bank accounts, accounts receivable, and other debts owed to the defendant." *See 29-0705 Moore's Federal Practice- Civil § 705.04.* A party may attach the funds used to pay a debt that is owed or will be owed to a defendant and the court may require such person to pay the debt to the attaching party upon maturity. *See Iran Express Lines v. Sumatrop, A.G.*, 563 F.2d 648 (4th Cir. 1977).

Under Supplemental Rule B, "an order of maritime attachment must issue upon a minimal *prima facie* showing" provided that the defendant cannot be "found within" the district in which the assets are sought to be attached. But under Supplemental Rule E(4)(f), any person claiming an interest in the attached property shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the attachment should not be vacated or other relief granted consistent with these rules. It is clear from the text of Rule E(4)(f) that the party having obtained the maritime attachment, bears the burden of showing that the attachment should not be vacated.

However, as recently confirmed by the Second Circuit Court of Appeals in *Aqua Stoli, supra,* the Rule(E)(4)(f) hearing is not intended to resolve the dispute between the parties, but to determine if the technical requirements of the Rule were met. Thus, as long as the plaintiff can establish that it has alleged a *prima facie* maritime claim, the defendant is not present in the district, the defendant's property has been restrained in the district and no other statutory bar to the attachment exists, the attachment should be upheld. *See Aqua Stoli*, at *28-29. *See also Order in Tide Line annexed hereto as Exhibit "A" at 16.*

Once a plaintiff has established the technical requirements stated in Rule B, the burden shifts to the defendant to prove the limited bases for vacateur. *Aqua Stoli* provides that an otherwise facially valid Rule B attachment may only be vacated upon three bases none of which

are present here. *See Aqua Stoli,* at *27. The only one of the above requirements contested here is whether the funds attached are those of the Top Union named as a Defendant in this action. Top Union's sole argument is that they are not the "Top Union" entity named in the Verified Amended Complaint. However, the evidence provided with this opposition clearly establishes that the Top Union bringing this motion is the Top Union named in the Verified Amended Complaint. As such, Top Union's motion to vacate must be denied.

## POINT II

### THE ATTACHED FUNDS BELONG TO THE TOP UNION NAMED IN THE VERIFIED AMENDED COMPLAINT

Through the Declaration of Huang Liangjin (hereinafter "Liangjin Decl."), Assistant to the Director of Top Union (China) Limited, Top Union contends that it is not the same Top Union that is a name by which Dayton Commercial Limited ("Dayton") and GSCA are also known. Despite Huang Liangjin's assertions to the contrary, the available evidence clearly shows that Top Union (China) Limited is the same entity named in the Verified Amended Complaint as "Top Union."

The Verified Amended Complaint names Top Union as a name by which Dayton Commercial Limited and GSCA are also known. *See Verified Amended Complaint annexed to the Tisdale Decl. as Ex. "1"* ¶ 5. Based on the evidence submitted herein and in the accompanying Tisdale Declaration, Plaintiff has attached the property of the correct Top Union (China) Limited. By a fixture recap of a charter party dated February 1, 2007, the Plaintiff chartered the M/V ALEXIS (hereinafter the "Vessel") to the Defendant (Dayton). *See M/V ALEXIS Fixture Recap annexed to the Tisdale Decl. as Ex. "2."* The second page of the fixture states that the charterer is "Dayton Commercial Limited" but that:

3

> Last fixtures under account Top Union:
> -m/v Manas, steel coils Changshu+Qingdao/St. Petersburg, disp ows: Paksu Shipping, Istanbul
> -m/v Navios Heracles, steel coils Changshu+Dalian/St. Petersburg, disp ows: Hyundai Merchant Marine

*See Id.* In the shipping industry, this reference clearly means that Dayton Commercial Limited made its last two charters (the M/V MANAS and M/V NAVIOS HERACLES) using the name Top Union. Based on this fact alone, it can be fairly stated that Top Union is a name by which Dayton is also known. However, considerable additional evidence supports this statement.

Exhibit 2 to the Declaration of Thomas L. Tisdale is an Infospectrum Report dated December 6, 2007, which confirms that this Top Union was the charterer of the M/V MANAS and that "both Dayton and Top Union have been described as new names for GSCA." *See Infospectrum Report annexed to the Tisdale Decl. as Ex. "3" at page 2.* The Infospectrum Report goes on to say that:

> we have spoken to sources at Paksu and Pacmar.[1] They confirm the MANAS was fixed with Top Union for a single trip around 3 months ago" ... [and that] ... "the full style of Top Union is "Top Union China Hong Kong." "They have been informed that Top Union is ex-GSCA UK.

*See Id.* The Infospectrum Report further states that there is only one Top Union (China) registered in Hong Kong and its registered name is "Top Union (China) Limited." *See Id. at page 3.*

Moreover, in an email dated January 14, 2008, in response to a request for further information identifying Top Union, Ms. Connie Lim of Pacmar made the following statement regarding the M/V MANAS fixture to Top Union as charterers:

> We have only the address of these chtrs:

---

[1] The Paksu referenced here was the disponent owner of the M/V MANAS that chartered the ship to Top Union. Pacmar is a shipbroker that fixed the M/V MANAS to Top Union through their broker, Neva Delta.

4

TOP UNION (CHINA) LTD.
UNIT 801, 8/F, BONHAM TRADE CENTER,
50 BONHAM STRAND, HONGKONG

WE FIXED THESE CARGO VIA CHTRS BROKERS:

NEVA-DELTA SHIPPING AGENCY
198095, prospect marshala govorova, 35
"yellow corner" bldg, office 124
St. Petersburg, Russia

*See January 14, 2008 email from Connie Lim to Adachart re: M/V MANAS annexed to the Tisdale Decl. as Ex. "4."* Ms. Lim goes on state that "when we fixed these business, they mention in clean fixture that Top Union is former GSCA London, UK. After these fixtures, we fixed them with Acct: Dayton which they mentioned belong to the same group as Top Union." *See Id.*

To best understand the next, most compelling evidence, a review of the factual statements contained in Huang Liangjin's sworn declaration in support of Top Union's motion is appropriate. In the Liangjin Declaration, Top Union alleges that it is a Chinese company that deals only in softgoods and investment services. Huang Liangjin states unequivocally, and under penalty of perjury, that this Top Union has never been involved in the shipment of steel or the chartering of vessels. However, Huang Liangjin admits in the declaration that the property of Top Union (China) Ltd. was attached and that this Top Union is registered at Unit 801 8/F, Bonham Trade Centre, 50 Bonham Strand, Hong Kong. *See Liangjin Decl.* ¶ 6.

This is the same name and address that Connie Lim gave for the charterer of the MANAS. *See January 14 email, Tisdale Decl. Ex "4;" see M/V ALEXIS Recap, Tisdale Decl., Ex. "2."* Most importantly, attached to the Declaration of Thomas L. Tisdale as Exhibit "5" is a copy of a Letter of Indemnity ("LOI"), which was delivered by the Charterers of the MANAS to the Owners of that vessel when the Charterers asked to have the consignee of the cargo changed

5

from that named in the bill of lading. The LOI refers to a shipment of "flat steel zinced in coils" and "protected steel in coils" being carried aboard the MANAS from Qingdao and Changshu, China to St. Petersburg, Russia (nearly the identical trade route as in the fixture which is the subject of this dispute). While the signer of the LOI cannot be identified, the identity of the company being bound is clear. As the letterhead establishes, the LOI was sent by, "Top Union (China) Ltd, Unit 801 8/F, Bonham Trade Centre, 50 Bonham Strand, Hong Kong" and is signed by "Top Union (China) Limited" as "Charterers" of the M/V MANAS.

Tisdale Declaration, Exhibit 5, belies all of the sworn statements of Huang Liangjin that Top Union had never heard of the term "fixture," had never chartered a vessel, had never dealt with a charter broker, had no involvement in shipments of steel, had not chartered the M/V MANAS, and that they had never dealt with or heard of Pacmar. *Liangjin Decl.*, ¶¶ *16, 18-20, 33*.

The Liangjin Declaration also states that Huang Liangjin spoke with Ms. Connie Lim of Pacmar several times and that during one of these conversations, Ms. Lim "confirmed to me that based upon her investigation, Pacmar Shipping had identified wrong Top Union to the Tisdale office, our Company was not the party that had previously chartered the vessels." *See Liangjin Decl.* ¶ 31. This, too, is patently false. The undersigned spoke with Ms. Lim on February 4, 2008 and Ms. Lim confirmed that, "at no time did I ever tell Top Union or anyone else that 'Pacmar Shipping had identified the wrong Top Union to the Tisdale Office.'" *See Tisdale Decl. at 5*. Instead, Ms. Lim confirmed yet again that the LOI in the MANAS charter was provided for and signed on behalf of Top Union and bears the address described above for Top Union (China) Ltd. Ms. Lim also stated that, other than what was provided in the LOI, she could not identify the Charterer of the MANAS with complete certainty because all of her dealings were with the

6

Charterers' broker, Neva-Delta, and not with Top Union directly. She confirmed that she never told Huang Liangjin or anyone else from Top Union that she had identified the wrong Top Union. However, she and her boss at Pacmar were reluctant to assist further since Huang Liangjin had threatened to institute legal proceedings against them for allegedly providing false information. As a result, they would not execute a Declaration themselves but, with the consent of the owners of the MANAS, would release a copy of the LOI signed by Top Union, which was the basis for the information contained in Ms. Lim's email of January 14, 2008. *See Tisdale Decl. at 5.*

It is irrelevant how many corporate entities have names that begin with "Top Union." There is only one "Top Union (China) Limited" in the Hong Kong registry. There is only one Top Union (China) Limited registered at the Bonham Strand. This Top Union is the only "Top Union China" that exists among all of the Live and Dissolved companies Top Union brings to the attention of the Court. *See Exhibit 1 to the Gutowski Affirmation in support of Top Union's Motion to Vacate.* Upon consideration of all of the foregoing, it is plain that the assertions made in the Liangjin Declaration are false. As such, Top Union's motion to vacate must fail.

## **CONCLUSION**

WHEREFORE, for all of the foregoing reasons, it is respectfully requested that this Court deny Defendant's Motion to Vacate in all respects and grant such other and further relief as the Court deems necessary and appropriate.

Dated: February 6, 2008
New York, NY

                        The Plaintiff,
                        INDUSTRIAL CARRIERS INC.,

By: _____/s/_____
      Lauren C. Davies (LD 1980)
      Thomas L. Tisdale (TT 5263)
      TISDALE LAW OFFICES, LLC
      11 West 42nd Street, Suite 900
      New York, NY 10036
      (212) 354-0025 – phone
      (212) 869-0067 – fax
      ldavies@tisdale-law.com
      ttisdale@tisdale-law.com

8

## AFFIRMATION OF SERVICE

I hereby certify that on February 6, 2008, a copy of the foregoing Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By:     /s/
Lauren C. Davies (LD 1980)