22-08/PJG
FREEHILL HOGAN & MAHAR, LLP
Attorneys for TOP UNION (CHINA) LTD.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

INDUSTRIAL CARRIERS, INC.,

                          Plaintiff,                                    **07 CV 7937 (RMB)**

          -against-                                              **REPLY DECLARATION**
                                                                **OF HUANG LIANGJIN**

DAYTON COMMERCIAL LIMITED a.k.a
GALVANIZED STEEL CONSUMERS
ASSOCIATION a.k.a. GSCA a.k.a GSCA LIMITED
a.k.a TOP UNION,

                          Defendant.
------------------------------------------------------------------x

HUANG LIANGJIN, pursuant to 28 U.S.C. §1746, declares and states as follows:

1. I am the assistant to the Director of Top Union (China) Ltd. (hereinafter **"Top Union China"**) and I submit this Reply Declaration in further support of our application to vacate the attachment against our funds in the sum of $898,748.74.

2. I previously submitted a Declaration in this action dated January 23, 2008 which provides my background and position with the company, so I will not repeat that again.

3. I have been provided with a copy of the opposition papers submitted by counsel for the Plaintiff in this action (the Tisdale law firm), and I have carefully reviewed those submissions.

4. In those opposition papers, the Plaintiff claims that my company (i.e. Top Union China) is the "Top Union" entity which was mentioned in the ALEXIS charter party as having previously chartered two other vessels (i.e. the M/V MANAS and M/V NAVIOS HERACLES) and that as the supposed prior charterer of these two ships, my company is

liable for the debts due under the subject ALEXIS charter because we are an alias for the Defendant in this case (i.e. Dayton Commercial). Mr. Tisdale also claims that my company issued a so-called "LOI" to the owners of the MANAS which, he asserts, proves his point that my company was involved in this prior MANAS charter.

5. None of this is true.

6. Since the date of my last Declaration, we have conducted an investigation and now have been able to develop the following additional information which confirms our utter lack of connection with any of these charters, or this string of companies who have apparently been chartering vessels under various names including GSCA, Top Union and most recently Dayton Commercial.

**Reaffirmation of Previous Statements**

7. For the sake of good order, and before addressing the documents and arguments set forth in the Plaintiff's opposition papers, I would like to first reaffirm each and every aspect of my previous Declaration.

8. Every statement contained in that Declaration is 100% correct and true.

9. My company, Top Union China, has no relationship with any of the Defendants in this case, has never chartered a vessel for the purpose of carriage of steel (or any cargo for that matter), was not the charterer of the MANAS or the NAVIOS HERACLES and is not an entity which has any connection with Dayton Commercial.

10. Similarly, and as discussed more fully below, we did not, nor have we ever issued a Letter of Indemnity ("LOI") and the copy of the LOI included in Mr. Tisdale's papers is not a document that was issued by our company.

11. With this background and reaffirmation, I now turn to the specific allegations contained in the Plaintiff's opposition papers, and the results of our investigation about these charter parties and this string of companies who have been chartering vessels in various names.

**My Company (Top Union China) was not the charterer of the MANAS**

12. As I previously testified, my company was not the charterer of the MANAS and we have never chartered a vessel, *ever*.

黃良瑾

13. As I hope the Court will appreciate, it is difficult in our position to prove this negative because we had no involvement in any of these transactions (charters) and hence no documents to prove that point. Nevertheless, since the date of my last Declaration, we have been in contact with the various entities identified in those contracts, including the agents, brokers and owners, and have developed information which clearly confirms our lack of involvement.

14. First, we again contacted Connie Lim at PACMAR, who, as the Court is now aware, acted as the broker for the Owner of the MANAS (Paksu Shipping) in that charter.

15. As I mentioned in my original Declaration, when our funds were first frozen and we learned of the nature of this claim, we contacted Connie Lim (PACMAR) and she confirmed to us that she never had any dealings with our company, which I discussed in my original Declaration.

16. Having reviewed the opposition papers, I now see that she has sent to Mr. Tisdale this so called "LOI" which I discuss in greater detail below, but upon seeing this, I have again made contact with her in an effort to develop information which would identify who the real charterer was of the MANAS, in particular, the identity of the party who paid the freight to her clients Paksu.

17. In this respect, and subsequent to my last Declaration, I also asked her to provide me with the Owner's contact details so that I could contact them directly (I believe they are located in Istanbul) and verify from whom they received the charter freight, and who they dealt with on that charter, to demonstrate that it was not us.

18. Ms. Lim indicated that she would provide us with this information, but she indicated that my requests would have to go through her top management.

19. I followed up several times with her but I have not received back any written confirmation of the MANAS Owner's details, but she did confirm to me over the phone that the company that actually paid the freight to her clients (Paksu) on the MANAS was a company called Unikom or Unikon. (See, Ex 1, copy of my email to Connie Lim confirming her oral advices that the freight was paid by Unikom/Unikon.)

20. I called her again today (February 26) and she confirmed that her top management had all of my requests for follow up information regarding the actual identity of the party who

黃良謹

chartered the MANAS and they would be responding, but I have received nothing further.

21. In a further effort to obtain this information, we contacted the other brokers who were identified in the MANAS charter (a company called Neva Delta in Russia) and made the same requests of them.

22. First, Neva Delta confirmed that they never had any dealings with my company in connection with any charter party. (See, Ex. 2, emails exchanged with Neva Delta between January - February 2008 requesting information about these charterers and confirmation of no prior involvement with my company.)

23. As confirmed by Neva Delta in their response of January 30, 2008 (See, bottom of first page of Exhibit 2), they never had any contact with our company.

24. We have since had several further email exchanges with Neva Delta in an effort to develop or confirm the information which Ms. Lim provided to us orally – that is, the identity of the party who paid the freight on the MANAS (Ms. Lim having told us it was Unikom/Unikon). (See, Exhibit 3, further emails exchanged with Neva Delta dated February 14, resulting in Neva Delta asking for further details on who my company was and what specific questions we had for them.

25. I promptly responded to them that same day (February 14) and provided them with the specifics of our company and the types of information we were looking for, specifically, the freight remittance details which would show who was really behind the charterer in these earlier contracts. (See, Exhibit 4 emails exchanged with Neva Delta February 14-15, 2008.)

26. In response, Neva Delta obtained and forwarded to us the banking transmittal details showing the source of the payment of the freight on the MANAS, and a copy of these wire transfer details are annexed as Exhibit 5.

27. As the Court will note, the payment of the freight on the MANAS charter was made by some company called Unicon Trading Ltd., just as Connie Lim had advised me and these banking transfer records show that this company (Unicon Trading) identifies itself in the transfer as being based in Belize City, Belize.

28. The documents further reveal that the freight was sent from a bank in Cyprus called FBME Bank, and it was transferred to the Owners of the MANAS (Paksu) in Istanbul via JPMorgan Chase, the total freight paid being $1,223,147.48 and $1,009,887.02.

29. The telefax answer backs at the top of two wire transfer documents (Exhibit 5) show that they were sent directly from FBME Bank in Limassol. (See very top of Exhibit 5 showing answer back from FBME Bank.)

30. As is evident from Exhibit 5, the freight for the MANAS was clearly not paid by us, but rather by some company called Unicon Trading. We have no idea who this Unicon Trading is, but the payment transfer details certainly demonstrate that my company was not the charterer paying the freight on the MANAS, as Mr. Tisdale claims.

31. For the Court's guidance, my company, Top Union China, has been in existence for approximately one year and during that period, we have utilized only one bank for all of our transactions, the Hangseng Bank which is a branch of HSBC in Hong Kong.

32. We have no office in Belize City and have never heard of Unicon Trading.

33. We have no relation or account with this FBME bank in Cyprus either.

34. The claim that we were the charterer of the MANAS is untrue, and the freight payment details show that the money came from some entity in Belize, but not my company.

**The Letter of Indemnity on the MANAS Is Not Our Document**

35. In the Plaintiff's opposition papers, they have also included as Exhibit 5, a copy of a Letter of Indemnity ("LOI") which Plaintiff's counsel Mr. Tisdale states was sent to him from Ms. Connie Lim at PACMAR, brokers for the owners of the M/V MANAS.

36. Mr. Tisdale states that this LOI was "delivered *by the charterers* of the M/V MANAS to the owners of that vessel" when there was some delay about delivery of the bill of lading, and he goes on to state that this "LOI belies all of the sworn statements of Huang Liangjin" that Top Union (China) Ltd. had never chartered a vessel.

37. Mr. Tisdale is mistaken.

38. Until this case, we had never even heard of a Letter of Indemnity or a "LOI", and had never seen one.

39. The document which is annexed as Exhibit 5 in Mr. Tisdale's papers is not a document which was issued by our company or signed by anyone at our company.

黄良瑾

40. The LOI is a forged document, we have no idea how Connie Lim obtained it or from whom she obtained it (they will not respond to our inquiries), but the following points bear out the false and fake nature of this LOI.

**(i)** *The Format of the LOI Generated by Whomever Created that is not Ours*

41. The format of the name, as appears in Mr. Tisdale's Exhibit 5 (i.e. *"Top Union (China) Ltd."*) is not the way our logo looks.

42. I am annexing to this Declaration as Exhibit 6 a copy of the main page from our web site, and this is the way we present ourselves in English, not the style set forth in the LOI submitted by Mr. Tisdale. We do not use all capitals for "Top Union" as appears in the fake LOI.

**(ii)** *The Stamp is Not Ours – Chinese Stamps Are Round, Not Square*

43. Next, I note that the stamp which appears on the second page of the LOI submitted by Mr. Tisdale is *not our stamp.*

44. For the Court's guidance, Chinese stamps are *never* issued in a square format as appears on the fake LOI.

45. Instead, they are always round.

46. A copy of our stamp appears on Exhibit 7, hereto, which is one of our typical invoices sent to one of our customers. As the Court will note, our stamp is round.

47. This is the only stamp issued for my company and it is the only one ever used.

48. It does not bear any resemblance to the fake stamp affixed at page 2 on the LOI submitted by Mr. Tisdale as his Exhibit 5.

**(iii)** *We never Sign Documents Except with Traditional Chinese Characters*

49. I should also mention that we operate as a traditional Chinese company and *sign all our documents with Chinese characters.*

50. The Court will note that this is the manner in which I signed my original Declaration (before the issue of the LOI ever came up) and the manner in which I sign this Declaration.

51. The signature which appears on Exhibit 5 to Mr. Tisdale's Declaration (this fake LOI) is signed in what I would describe as a western fashion (handwritten signature).

52. We never sign in that fashion and that is not a signature of anyone in my company.

黃良瑾

53. In fact, only our Director Huang Bei has authority to sign Contracts and Authorized Letters. She never signs anything with a western signature style as appears in the fake LOI.

**(iv)    The Address is Not Our Business Address, but is our Registered Agent.**

54. I should next mention that the address that appears for Top Union at the top of Mr. Tisdale's Exhibit 5 is the address which does appear on our corporate documentation filed with the Hong Kong Secretary, but that is the address of our registered agent.

55. We have no actual office or any personnel at that address at 50 Bonham Strand in Hong Kong.

56. Our corporation has only one location in China at 248 Yan Ling Road, Tian He District, Guangzhou City, Guangdong Province, China. (Exhibit 8, copy of our letterhead on our stationary, but that is always in Chinese, not English, but the Court will note that in the Chinese address right under our name you will see the number 248 which corresponds to the street address I have mentioned above in English.)

57. For the Court's guidance, the address stated on the fake LOI (Bonham Strand in Hong Kong) is the same address for dozens and dozens of corporations who utilize that same registered agent, whose address then becomes the registered address for purposes of the Hong Kong registry.

58. In order to be a Hong Kong registered company, as we are, you need a registered address there, but this is not our business address.

59. While I can offer no explanation why that address appears on this fake LOI, it is a fact that anyone with a computer and access to the internet can search the Hong Kong corporate registry and pull up our name and that address (of our registered agent) and insert it on a piece of paper as now appears as the fake LOI (Tisdale Exhibit 5), but as I said above, it is not a document that was issued by our company.

60. Also, I would hasten to point out to the Court that although our website is in Chinese, it does show the products in which we were involved in (i.e. the "soft goods I previously mentioned) including, pens, bottle openers, small plastic bags, inexpensive plastic watches, fabric, etc. (see, Exhibit 6 hereto) and the invoice I have attached as Exhibit 7 is typical of the type of business we do, where we purchase soft goods from domestic Chinese suppliers and then re-sell the soft goods to some other third party.

NYDOCS1/299554.1

黄良瑾

61. I should also point out that on our invoice (Exhibit 7) there is a reference to our bank which serves to reconfirm what I said above – that is, our bank is the Hangseng Bank, but not this FMNB Bank in Cyprus.

62. As I have said before, however, we simply do not, and have never dealt with steel shipments and never have chartered a ship.

63. In summary, I can unequivocally state that the LOI (Exhibit 5 to the Tisdale Declaration) is not a document which was issued by Top Union (China) (our company) and as I have previously stated, we had no involvement with the charter of the MANAS or any other vessel, *ever*.

**Top Union China Was Not the Charterer of the NAVIOS HERACLES Either.**

64. Mr. Tisdale also claims that we were the charterer of the vessel NAVIOS HERACLES, the second vessel mentioned in the ALEXIS charter party as having been previously chartered by "Top Union".

65. This is similarly not true.

66. In an effort to prove this negative, we had our New York counsel contact the owner (Hyundai Merchant Marine) and request confirmation that we were not involved.

67. Our counsel will speak to this in a separate declaration, but initially, Hyundai Merchant Marine declined to respond, so our counsel issued a subpoena to them.

68. Hyundai has since confirmed that my company was not in fact the charterer, and has never chartered a vessel from Hyundai, but as this is discussed more fully in the Gutowski Reply Declaration, I will not repeat it here.

69. Suffice it to say that we had to arrange for the service of subpoenas on Hyundai Merchant Marine in order to get this confirmation and that confirmation from Hyundai again demonstrates that the information relied upon by Mr. Tisdale is wrong.

**Discussions with Connie Lim**

70. As outlined above, in my original Declaration, I made reference to the fact that I had spoken, several times, with Ms. Connie Lim, the broker at PACMAR who I understand represented the owners of the MANAS on that charter.

黃良瑾

71. The clear purpose of those initial calls in January, 2008 was to obtain from her confirmation that we were not the Top Union company who was the charterer of the MANAS and I made that very clear to her ever time we spoke.

72. During those initial discussions she did indeed confirm to me that she had never dealt with us before and that was the basis for the statements that I made in my original Declaration.

73. It now seems, based upon what Mr. Tisdale says, that she has confirmed the same thing in her communications to him because he indicates that she told him that they (PACMAR) had never any dealings with the charterer directly.

74. That is not exactly what she explained to me but in any event, as she has now confirmed that she had never had any direct contact with the Top Union entity who chartered the MANAS, I consider it very unfair that Ms. Lim's comments to Mr. Tisdale should now be used by him to show that we were involved.

75. In my recent discussions with Connie Lim, she has confirmed this to me (i.e. that she never had any direct contact with the Top Union entity who purportedly chartered the MANAS) and earlier she has confirmed that she never had any contact with our company.

### Other Efforts to Prove the Negative

76. In a further effort to demonstrate to the Court that we were not the charterer, we have conducted the following additional investigation to, in essence, prove the negative.

### (i) *Contact with Neva Delta*

77. As outlined above, in the MANAS charter party which was annexed to Mr. Tisdale's Declaration as Exhibit 6, the Top Union entity in that charter is described as having several agents, including an agent in St. Petersburg called "Neva Delta Shipping Agency". (See, Exhibit 6 to Tisdale Declaration at p. 4.)

78. Before I contacted them, I researched this Neva Delta Shipping company on the web and they appear to be a very large, established Russian ship agent which first opened in 1998.

79. A copy of their website is attached as Exhibit 9.

80. My counsel, Freehill Hogan & Mahar, will comment further on them but I understand from my discussions that they are a member of a BIMCO organization which is

NYDOCS1/299554.1

茜良瑾

apparently a reputable shipping group, but I will leave it to my counsel to provide greater details about this.

81. As noted above, Neva Delta has confirmed that they never had any contact with my company in respect to the charter of the vessels identified in the ALEXIS charter party, including the MANAS. (See, Exhibits 2-4 herein.)

### (ii) Contact with Changshu Tongsheng

82. There was a second agent listed in the MANAS charter (see Exhibit 6 to Tisdale Declaration at p. 4) called Tongsheng International Shipping and they are based in Changshu.

83. I contacted the person identified in the charter party, a Mr. Reon Lee, explained to him this situation and asked him to confirm in writing whether he had ever had any contact with us and whether we were the Top Union entity for whom they act as an agent.

84. I also sent him several emails reiterating my request, copies of which are attached as Exhibit 10. They include emails sent on January 25, 29 and February 20, 2008. Because Tongsheng is a Chinese company I sent the emails in Chinese, so I provide translations so the Court can read the content of the actual questions, which essentially asked for the same type of information (about this other Top Union entity for Tongsheng had been acting) as I had asked from Neva Delta.

85. I spoke with Mr. Lee on his mobile phone (mobile number: 13506239776) on February 18, he confirmed that he had shown all the emails to his boss, and his boss said that it was necessary for him to talk with me directly.

86. I asked Mr. Lee to provide me with the mobile phone of his boss and he gave me Mr. Zhi's mobile number: 13806230110.

87. I then spoke with Mr. Zhi directly on his mobile phone and he confirmed that his company never had any contact with us of any type, and we were not the entity with whom he was dealing when he acted as an agent on the MANAS charter.

88. He also indicated that he would send me written confirmation of this and said that he would also describe this other Top Union entity with whom they had prior contact as agents.

黄良瑾

89. I called him again today (February 26) but he advised me that he would not be able to send any writings because he did not have permission from his principals.

90. I nevertheless wanted to advise the Court of this further effort, the results, and the specifics of our request, his telephone number, etc., to verify that we were doing everything possible to prove we were not in any way involved in these transactions.

### *General Comments*

91. In closing, I can only but reiterate that we are not the Top Union entity that chartered the vessels MANAS or NAVIOS HERACLES, have never chartered a vessel, did not issue any LOI, never issued or sent an LOI to Connie Lim, and have never shipped steel.

92. Trying to prove a negative is difficult, but I hope that the lengths to which we have gone by trying to contact the agents and brokers who were involved with this other Top Union entity, and the two owners of the vessels which the Plaintiff claims were previously chartered by a Top Union entity, serves to demonstrate the truthfulness of our position.

93. I am not certain what else we can do because we have no "evidence" to prove something about which we had no involvement.

94. I have no idea who created that LOI sent by Connie Lim to Mr. Tisdale but it was not created or issued by my company.

95. However, as I mentioned above, it is very easy to simply look up on the web who we are and to check with the Hong Kong registry for our registered agent's address so if someone wanted to make it appear as if they were performing a contract in our name, they could utilize that address, presumably, and steal our corporate identity.

96. The confirmation from Hyundai Merchant Marine (that we were not the charterer of the NAVIOS HERACLES), and the proof that the payment of the freight paid to Paksu as the Owner of the MANAS came from some Belizean company (Unicon) from a bank at which we do no business in Cyprus, clearly shows that we were not the party shipping the steel or paying the freight.

97. I personally feel that it was unfair of the Plaintiff not to have conducted any of this type of an investigation before it inserted the name of "Top Union" in its pleadings and seized our funds wrongfully, because if it had conducted any investigation with these agents, brokers and Owners, it would have become clear that we had no involvement.

黄良謹

98. The steps that we have taken to try to show the Court the true reality reflects that we are not afraid of the evidence or the truth, and have been trying with all the means at our disposal to get the evidence to unearth the true identity of that other Top Union entity.

99. Certainly, if we were that other Top Union entity, we would never invite or foster the production of evidence which would lead back to us, and that evidence has now led to some company called Unicon, but not my company.

100. I appreciate the Court's attention to my further comments and would ask that our funds be released.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: Executed on February 26, 2008 at
_____黄州市_____, Peoples Republic of China

黄良谨

_____
HUANG LIANGJIN

# Ex. 1

□□□□ □□□ □□□

**The page cannot be displayed**

The page you are looking for is currently unavailable. The Web site
might be experiencing technical difficulties, or you may need to adjust

□□□□□ ▼  □□ □□ □□ □□
□□□□ *huang_liangjin@sina.com* □□□□
□□□□ *Connie Lim <dry@pacmar.com.sg>*
□    □□ *08-02-15 17:59:31*
□    □□ **request**


Dear Connie,

Good afternoon!

Hope you had very good time during Spring Festival!


Kindly ask to accept my apology for bringing you inconvenience.


But I will be very grateful for your help.

During our telephone conversation you have said that the name of the company which paid the freight
for vessel called MANAS was Unikom, am I right?

Could you confirm what was the exact name of that company Unikom or Unikon?

You help will be greatly appreciated.


Looking forward for your help.


Best regards,

Huang Liangjin


---------------------------------------------------------------

□□□□□□□□□□□□□,□□□□KFC□□□
( http://d1.sina.com.cn/sina/limeng3/mail_zhuiyu/2008/mail_zhuiyu_20080205.html )

========================================================================

□□□□□□□□□□□□□□□□□□□□□□http://bbs.bj.sina.com.cn/tableforum/App/index.php?bbsid=143&subid=0&ismain=1□

| □□□□□ ▼ | □□ □□ □□ □□ |

# Ex. 2

□□□□ □□□ □□□

**The page cannot be displayed**

The page you are looking for is currently unavailable. The Web site
might be experiencing technical difficulties, or you may need to adjust

□□□□□     □□ □□ □□ □□

□□□□ *huang_liangjin@sina.com* □□□□

□□□□ *chartering@delta.spb.ru*

□   □□ *08-02-12 19:38:27*

□   □□ **RE:RE: Enquiry**

Dear Sirs, good afternoon!
We were very pleased to receive the letter from you, it much helps us.

And right now we need your help again.

I 'll explain you the situation which is happening right now. As I wrote you earlier, our company's name was mixed up
with an other company's name.
A certain ship owner rose a claim against my company referring on my company's address.
My company's name is Top Union (China) Limited.
My company's registered address is Unit 801 8/f, Bonham Trade Centre, 50 Bonham Strand, Hong Kong, but our
Trading Address is 248 Yan Ling Road, Tian He District, Guangzhou city, Guangdong province, China.
Our web site is www.top-union-china.cn
And that's why I would like to receive from you the following information:
Could you advise us where did you get our Hong Kong address, how you do know my company's Hong Kong address?
IT'S VERY IMPORTANT FOR US!

If you have question you can reach me on my mobile.
Looking for your prompt reply.
Huang Liangjin
mobile: □□□+8613911651107□
---- Original Message ----
From:Neva-Delta Chartering
To:
Subject:RE: Enquiry
Date:08-01-30 16:14:46

fm: neva-delta s.a. st.petersburg
    ph 07 (812) 3467512
    fax 07 (812) 7405122
    email: agency@delta.spb.ru (agency dept)
           chartering@delta.spb.ru (chart dept)

Our Ref:IS-0130.110723 Jan-30-08 11:07 HRS (UTC +3,00)

liangjin / igor - good day

many thnks your last and sorry for delay in reply

we hereby confirm that we have never had any business with your good
company.

pls advise owners if they have any questions they should apply to the chrts

file://C:\Documents and Settings\gadecki\Local Settings\Temporary Internet Files\OLKBAE\to Neva-Del...     2/26/2008

via already established channel

brgds / is

---

From: huang_liangjin@sina.com [mailto:huang_liangjin@sina.com]
Sent: Wednesday, January 30, 2008 9:25 AM
To: chartering@delta.spb.ru
Cc: agency@delta.spb.ru
Subject: FWD:Enquiry


Dear Sirs,
I have send you an e-mail some time ago but failed to receive any reply.
Kindly ask you to confirm we have no connection to your good company.
Regards,
Liangjin

-------------- Original Message --------------

Dear Sirs,
My name is Mrs. Liangjin, I represent Chinese company Top Union (China)
Limited. We have been provided with your contacts by shipping broker Ms.
Connie Lim form Pacmar Shipping PTE Ltd.
Our company has been mixed up with some other company which name also starts
with words "Top Union". We ask you to confirm that our company has never had
any business with your good company and we have never chartered any ship
with your help.
You can check our web-site www.top-union-china.cn
Thank you in advance.
Regards,
Liangjin


-------------------------------------------------------------------
□□□□□□□□□□□□□□□□□□□□(
http://d1.sina.com.cn/sina/limeng3/mail_zhuiyu/2008/mail_zhuiyu_20080128.htm
1）

===================================================================
□□□□□□□□□□□□□□□□□□□□□□□
□http://bbs.bj.sina.com.cn/tableforum/App/index.php?bbsid=143&subid=0&ismai
n=1□

-------------------------------------------------------------------
□□□□□□□□□□□□□□□□□□□□(
http://d1.sina.com.cn/sina/limeng3/mail_zhuiyu/2008/mail_zhuiyu_20080128.htm
1）

===================================================================
□□□□□□□□□□□□□□□□□□□□□□□
□http://bbs.bj.sina.com.cn/tableforum/App/index.php?bbsid=143&subid=0&ismai

n=1☐

--------------------------------------------------------------------
☐☐☐☐☐☐☐☐☐☐☐,☐☐☐☐KFC☐☐☐
( http://d1.sina.com.cn/sina/limeng3/mail_zhuiyu/2008/mail_zhuiyu_20080205.html )

==================================================================
☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐http://bbs.bj.sina.com.cn/tableforum/App/index.php?bbsid=143&subid=0&ismain=1☐
 ☐☐☐☐☐    ☐☐ ☐☐ ☐☐ ☐☐

Ex. 3

□□□□ □□□ □□□

☐ The page cannot be displayed

The page you are looking for is currently unavailable. The Web site
might be experiencing technical difficulties, or you may need to adjust

□□□□□  ·  □□ □□ □□ □□
□□□□ *NDCHARTERING* <chartering@delta.spb.ru> □□□□□□   □□□□□   □□□□
□□□□ *<huang_liangjin@sina.com>*
☐  □□ *08-02-14 19:21:47*
☐  □□ **RE: RE: Enquiry**


dear mrs huang liangjin

please specify what assistance you are expecting from us

repeat again we have never had any business with you and we do not know
you

please advise your full style, domicile for our reference

please advise name of company & person raising claims against your
company, what this claim is exactly about.

please advise shipowners if they have any questions they should apply to
the charterers strictly via already established brokerage channel !


best regards
neva-delta
as brokers only


-----Original Message-----
From: huang_liangjin@sina.com [mailto:huang_liangjin@sina.com]
Sent: Thursday, February 14, 2008 1:15 PM
To: chartering@delta.spb.ru
Subject: RE:RE: Enquiry


Dear Sirs, good afternoon!
I'm really sorry for disturbing you, but my company is in very difficult
position right now, because of the legal procedure.
If your company could assist with our request, we will be most grateful.
We are looking forward to hear from you in hopes you can help us.
Best regards,
Huang Liangjin
IIM GOINGT TO GIVE YOUR CONTACT INFORMATION TO OUR LAWYER,  SO HE CAN
CONTACT YOU SOON.

-------------------------------------------------------------------
□□□□□□□□□□□□,□□□□KFC□□□(
http://d1.sina.com.cn/sina/limeng3/mail_zhuiyu/2008/mail_zhuiyu_20080205
.html )

=================================================================
□□□□□□□□□□□□□□□□□□□□□
□http://bbs.bj.sina.com.cn/tableforum/App/index.php?bbsid=143&subid=0&i
smain=1□

□□□□□   □□ □□ □□ □□

- □□□□
- □□□□

# Ex. 4

□□□□ □□□ □□□

☐ **The page cannot be displayed**

The page you are looking for is currently unavailable. The Web site
might be experiencing technical difficulties, or you may need to adjust

□□□□□    □□ □□ □□ □□

□□□□ *Neva-Delta Chartering <chartering@delta.spb.ru>* □□□□□□    □□□□□    □□□□

□□□□ *<huang_liangjin@sina.com>*

☐    □□ *08-02-15 00:53:59*

☐    □□ **RE: RE: RE: Enquiry**

dear mrs huang liangjin,

thnks your last

pls advise the exact name of the shipping company rasing claim and vessels'
name

hope it will be much helpful to investigate the matter

best regards
neva-delta
as brokers only

---

From: huang_liangjin@sina.com [mailto:huang_liangjin@sina.com]
Sent: Thursday, February 14, 2008 7:03 PM
To: NDCHARTERING
Subject: RE:RE: RE: Enquiry

Dear Sirs, thank you for a prompt reply.

Kindly ask to accept my excuse for bringing you much inconviniece.

I will try to explain you all situation as I understand:

Our company name is Top Union (China) Limited, we are in the soft goods
business, we have no any involment in shipping.

Our registered address: Unit 801 8/f, Bonham Trade Centre, 50 Bonham Strand,
Hong Kong,

Our Business Address: 248 Yan Ling Road, Tian He District, Guangzhou city,
Guangdong province, China. This address actually stated in our web-site.

One Shipping Company obtained an order of attachment in NY against Dayton,
the charterer, and several their entities which it claims are alias of

Dayton, including a company Top Union.

We are Top Union (China) Limited, which is in soft good business as I've already said, however the assets of my company were frozen, because Plaintiff assumes that my company and Dayton are the same company, which involved in steel business and shipments of steel. These assumption the Plaintiff made according to Chater Party, where were wrote that TOP UNION entity chatered the vessels called MANAS and Navios Heracles, where the agent of these vessels was your company Neva-Delta.

BUT IT WAS NOT OUR COMPANY. WE HAVE NEVER CHARTERED VESSELS.

We suppose that some mistake of company identification happed, and this is where we need your help.Your explanation will help us to get our assets released:

1. Where did you get our address?

2. May be you can assume how such kind of mistake (with our address) could happen?

3. Evidences, that freight for that vessels had not been paid by Our Company, for example bank slips.

If you could provide us with that information, it will show to Court who the Top Union entity was in that prior fixture for vessels called MANAS and Navios Heracles, so that it will become clear that IT WAS NOT THE SAME INTITY/CLIENT THAT WE NOW REPRESENT , WE ARE THE WRONG ENTITY, SO THE COURT WILL IMMEDIATELY REALESE OUR FUNDS.

Thanks again for your help and anything you can do to assist would be greatly appreciated.

WE ARE REALLY IN VERY DIFFICULT POSITION.

Looking forward for your help!

Best regards,

Huang Liangjin

----------------------------------------------------------------
□□□□□□□□□□□,□□□□KFC□□□(
http://d1.sina.com.cn/sina/limeng3/mail_zhuiyu/2008/mail_zhuiyu_20080205
.html )

================================================================
□□□□□□□□□□□□□□□□□□□□□□
□http://bbs.bj.sina.com.cn/tableforum/App/index.php?bbsid=143&subid=0&i
smain=1□

-----------------------------------------------------------------

□□□□□□□□□□□,□□□□KFC□□□(
http://d1.sina.com.cn/sina/limeng3/mail_zhuiyu/2008/mail_zhuiyu_20080205.htm
1）

========================================================================

□□□□□□□□□□□□□□□□□□□□□□□
□http://bbs.bj.sina.com.cn/tableforum/App/index.php?bbsid=143&subid=0&ismai
n=1□

·□□□□□    □□ □□ □□ □□

Ex. 5

20/02 2008 12:42 FAX  0035722888557          FBME BANK LTD          4 FBME LIMASSOL  @001/001

ATT:- ANNA

```
/21FBMECY2NAXXX7731730284}{4:{177:0705231650}{451:0}}

/-16:37:06          Printer2-0272-000001          1

----------------- Instance Type and Transmission ---------------
Notification (Transmission) of Original sent to SWIFT (ACK)
Network Delivery Status  : Network Ack
Priority/Delivery        : Normal
Message Input Reference  : 1651 070523FBMECY2NAXXX7731730285
------------------------ Message Header ----------------------
Swift Input  : FIN 103 Single Customer Credt Transfer
Sender       : FBMECY2NXXX
               FBME BANK LTD
               NICOSIA (LEFKOSIA) CY
Receiver     : CHASUS33XXX
               JPMORGAN CHASE BANK, N.A.
               NEW YORK,NY US
------------------------ Message Text ------------------------
  20: Sender's Reference
      LIMDPAY071430026
  23B: Bank Operation Code
       CRED
  32A: Val Dte/Curr/Interbnk Settld Amt
       Date        : 23 May 2007
       Currency    : USD (US DOLLAR)
       Amount      :          #1.009.887,02#
  33B: Currency/Instructed Amount
       Currency    : USD (US DOLLAR)                    LIM
       Amount      :          #1.009.887,02#
  50K: Ordering Customer-Name & Address
       /CY21115010020739980USDCACC001
       UNICON TRADING LIMITED
       1 MAPP STREET
       BELIZE CITY
       BELIZE
  56A: Intermediary Institution - BIC
       IRVTUS3N
       BANK OF NEW YORK
       NEW YORK,NY US
  57A: Account With Institution - BIC
       TGBATRIS
       TURKIYE GARANTI BANKASI A.S.
       ISTANBUL  TR
  59: Beneficiary Customer-Name & Addr
      /TR940006200008800009889041
      PAKSU DENIZCILIK TICARET LTD.STI
      Osmanaga Mah/Halitaga Cad.26/14
      Kadikby Istanbul
  70: Remittance Information
      Payment for freight services
      Invoice 0715/5/07 dated 10/5/2007
  71A: Details of Charges
       SHA
  71F: Sender's Charges
       Currency    : USD (US DOLLAR)
       Amount      :                    #199,#
----------------------- Message Trailer ---------------------
{MAC:4EB45307}
{CHK:5E426782EB23}
----------------------- Interventions -----------------------
Category      : Network Report
Creation Time : 23/05/07 16:36:40
Application   : SWIFT Interface
```

```
07-16:29:00          Printer2-4290-000001            1
```

```
------------------- Instance Type and Transmission --------------
Notification (Transmission) of Original sent to SWIFT (ACK)
Network Delivery Status  : Network Ack
Priority/Delivery        : Normal
Message Input Reference  : 1642 070509FBMECY2NAXXX7708726368
------------------------- Message Header -------------------------
Swift Input   : FIN 103 Single Customer Credit Transfer
Sender        : FBMECY2NXXX
                FBME BANK LTD
                NICOSIA (LEFKOSIA) CY
Receiver      : CHASUS33XXX
                JPMORGAN CHASE BANK, N.A.
                NEW YORK,NY US
----------------------- Message Text ----------------------------
20: Sender's Reference
    LIMOPAY071290009
23B: Bank Operation Code
    CRED
32A: Val Dte/Curr/Interbnk Settld Amt
    Date        : 09 May 2007
    Currency    : USD (US DOLLAR)
    Amount      :         #1,223,147,48#
33B: Currency/Instructed Amount
    Currency    : USD (US DOLLAR)
    Amount      :         #1,223,147,48#       LIMPESOL
50K: Ordering Customer-Name & Address
    /CY21115010020730990USDCACC001
    UNICON TRADING LIMITED
    1 MAPP STR
    BELIZE CITY
    BELIZE
57A: Account With Institution - BIC
    TGBATRIS
    TURKIYE GARANTI BANKASI A.S.
    ISTANBUL  TR
59: Beneficiary Customer-Name & Addr
    /TR940006200008800009089041
    PAKSU DENIZCILIK TICARET LTD.STI.
    OSMANAGA MAH.HALITAGA CAD.NO.26-14
    KADIKOY ISTANBUL
70: Remittance Information
    PAYMENT FOR FREIGHT SERVICES
    INVOICE 0715/5/07 DATED 4/5/2007
71A: Details of Charges
    SHA
71F: Sender's Charges
    Currency    : USD (US DOLLAR)
    Amount      :              #199,#
---------------------- Message Trailer -------------------------
{MAC:3B5C9041}
{CHK:83278F233CB1}
------------------------- Interventions -------------------------
Category      : Network Report
Creation Time : 09/05/07 16:28:32
Application   : SWIFT Interface
Operator      : SYSTEM
Text
{1:F21FBMECY2NAXXX7708726368}{4:{177:0705091642}{451:0}}
```

Ex. 6

TOP UNION (CHINA) LIMITED

# Top Union (China) Limited

*Top Union (China)*

## Top Union (China) 简介

汇通（中国）有限公司 总部设于广东省广州市，是一家专门从事出口的贸易公司。自营和代理各类商品及技术的出口贸易业务；开展对销贸易和转口贸易。从事产品类型包括：烟具类、冰箱饰类、饰品及挂件类、杯子、笔类、工艺品类、箱包类、电子电器类、日用品类、玩具类，澳大利亚利澳羊皮制品、首饰类各式服装、针纺织品，等，产品主要出口到欧美等国家，现已于东南亚、欧州等国家建立良好的销售网络经济。已实现了出口有市场，销售有网络，生产有基地的快捷经济，有力地支持取得的出口业务和外向经济的发展。

公司 2007 年 2 月投资成立，本公司是专有独立的自营出口权的综合性外贸公司，从事各种出口代理业务，同时还配备专业的人员进行采购、提供翻译、咨询、服单、仓储、商检、运输 报关等一系列服务。









### 联系我们

汇通（中国）有限公司

地址: 中国广东省广州市天河区濂泉路 248 号 404 室
电话: 86-20-37269796   13911651107
传真: 86-20-37269796
E-Mail: sales@top-union-china.cn

电话: 86-20-37269796    传真: 86-20-37269796    E-mail: webmaster@top-union-china.cn

版权所有 2007 Top Union(China) 进口中心

# Ex. 7

# 产品购销合同

| | | | | | 合同编号：E7709-3 |
| --- | --- | --- | --- | --- | --- |
| 买方：运海（中国）有限公司 | | | | | 签订地点：广州 |
| 卖方：力坚亚洲集团有限公司 | | | | | 签订时间：2007年12月03日 |

第一条　标的、数量、价款及交（提）时间

| 产品名称 | 规格型号 | 计量单位 | 颜色 | 订购数量 | 单价 | 金额合计 | 交货时间 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 有机亚麻纱 | NM 24 | 公斤 | 红 | 50 000 | 12.5元/公斤 | 625 000.00 USD | |
| 纯亚麻布 (100% 亚麻) | 50x56/23x23/63" (3939) | 米 | 白 | 25 000 | 3.3USD/米 | 82 500.00 USD | |
| 纯亚麻布 (100% 亚麻) | 50x56/23x23/63" (3939) | 米 | 灰 | 25 000 | 3.3USD/米 | 82 500.00 USD | |
| 纯亚麻布 (100% 亚麻) | 50x56/23x23/63" (3939) | 米 | 绿 | 25 000 | 3.3USD/米 | 82 500.00 USD | |
| 纯亚麻布 (100% 亚麻) | 50x56/23x23/63" (3939) | 米 | 黑 | 25 000 | 3.0USD/米 | 75 000.00 USD | |
| 提花亚麻布 (100% 亚麻) | 46x42/12x9/63" (2015) | 米 | 红 | 25 000 | 4.6USD/米 | 115 000.00 USD | |
| 提花亚麻布 (100% 亚麻) | 46x42/12x9/63" (2015) | 米 | 灰 | 25 000 | 4.6USD/米 | 115 000.00 USD | |
| 提花亚麻布 (100% 亚麻) | 46x42/12x9/63" (2015) | 米 | 绿 | 25 000 | 4.6USD/米 | 115 000.00 USD | |
| 提花亚麻布 (100% 亚麻) | 46x42/12x9/63" (2015) | 米 | 黑 | 25 000 | 4.0USD/米 | 100 000.00 USD | |
| 总金额 | | | | 50000公斤/200000米 | | 1 392 500.00 USD | |

合计美金金额（大写）：一百三拾玖万贰仟伍佰圆整　美金(1 392 500．00)US 按实际提数量结付价款

交货时间：2008年3月5号之前

交货数量：50000公斤/200000米+/-5%

第二条　质量要求：　一致（目测的地步）

第三条　质量期限：

第四条　交（提）货地点、方式：CIF按大利亚一趟交货，卖方先做100%款项后15天内交货装运

第五条　包装标准、包装物的供应与回收：低价塑料袋包装

第六条　合理损耗：

第七条　验收期及方法：买方须送货到买方指定地点

第八条　验收标准、异议及期限：

第九条　结算方式及时间：签订合同后20天内买方预付货款，合同总金额大概70% 金额汇款至卖方，剩余金额买方在卖方发货前结清

第十条　组织方式(也可另立担保合同)：以买方开单单日为准。

第十一条　本合同经买卖双方法定代表人签字并加盖公章后生效。有效期限为2007年12月10号至2008年4月10日

违约责任：

1. 本合同…（经济赔偿的）甲…
2. 买方须按…
3. 乙方未按照本合同…
4. 因甲方或…
5. 乙方违约时按本…

第十三条　合同争议的解决方式：

第十四条　本合同经双方法定代表人签字并加盖公章…后生效

第十五条

第十六条

| 买 方 | 卖 方 |
| --- | --- |
| 公司名称：运海（中国）有限公司 | 公司名称：力坚亚洲集团有限公司 |
| 住所：中国"东莞"广州市天河区珠江新城…248号 | 住所：Rm 813 8/F, Hollywood Plaza, 610 Nathan Rd, Kowloon, Hong Kong |
| 法定代表人：黄露经理 | 法定代表人：唐雪琴 经理 |
| 委托代理人： | 委托代理人： |
| 电话：+86-020-37269796 | |
| 传真：+86-020-37269796 | |
| 开户银行：Hangseng Bank City Garden Branch 233 Electric Road, Hong Kong | |
| 帐号：258-353911-883 | |
| 签公司盖章： | 签公司盖章： |
| | 经办人： |
| | 2007年12月03日 |

# Ex. 8

页1/1

## 滙嵩（中国）有限公司
## Top Union (China) Limited

中国广东省广州市天河区燕岭路248号

### 形式发票

TO:力豐亞洲集團有限公司

形式发票号：EI/09-3 （1）

日期：2007年12月03日

信用证号：/

合同号：EI/09-3

TO: 澳大利亚 - 墨尔本

FROM: 中国广东

| 标志 | 标的和描述 | 价格 | 总金额 |
|---|---|---|---|
| N/M | 纺织品 | CIF 澳大利亚 - 墨尔本 | |
| | 50000公斤 +/-5% | | |
| | 200000米 +/-5% | | |
| | 金额： | 1 000 000，00USD | 1 392 500，00USD |
| | 一佰万圆整美金 | | |

# Ex. 9

# NEVA-DELTA SHIPPING

- home
- agency/chartering
- forwarding
- personnel







**Welcome to "NEVA-DELTA SHIPPING AGENCY" St.-Petersburg, Russia.**

Our full style and contact details:

NEVA-DELTA SHIPPING AGENCY
198095, PROSPEKT MARSHALA GOVOROVA,35
"YELLOW CORNER" BLDG, OFFICE 124
ST.PETERSBURG, RUSSIA
Bimco Reg.No. : 122689 since 1998

TEL :+007 (812) 740-51-21
FAX :+007 (812) 740-5122
E-FAX :+44 (0870) 161 9577 (via UK)
TELEX : 4070627 NEVA G (via UK)
COMTEXT : A53SU594 ; ICQ# 35772829

E-Mail : agency@delta.spb.ru (agency dept)
E-Mail : chartering@delta.spb.ru (chartering dept)

Home page: http://neva-delta.com

## Services available include

- Liner and tramp agency
- Cargo and Ship brokering
- Protecting agency
- Crew change and repatriation
- Vessel supply services
- Husbanding attendance
- Bunkering
- Clearance and forwarding
- Transshipment and haulage
- Surveying
- Air cargo
- Freight forwarding
- Crew reqruitment



**Swan Container Line GmbH & Co, KG Germany**

**PHOTO GALLERY**



For additional details or to download the latest Schedule please click on the link below.
(latest Schedule)

 

Ex. 10

发件箱

发件箱

寄件人： sales@top-union-china.cn        加入地址本    拒绝发件人    邮件头信息    邮件下载    打印预览

收件人： tongsheng@cshs.com.cn

日 期： 2008年01月25日 22时30分

主 题： 滙高 （中國）有限公司

附 件：

🔄回 复    全部回复    🔄转 发    ⬅上一封    ➡下一封    ✂删 除    📁移动至    请选择

李先生，你好，

我是滙高 （中國）有限公司 （TOP UNION (CHINA) LIMITED）的黄小姐，我今天下午给您打过电话，我们公司是中国的一家外贸公司，可能贵公司搞错了索赔对象。

请登陆本公司网站是：www.top-union-china.cn

然后麻烦你回信给我，帮忙确认下：

贵公司：Changshu Tongsheng International Shipping Agency

同本公司：滙高 （中國）有限公司 TOP UNION (CHINA) LIMITED 黄良瑾女士

商业地址：中国广东省广州市天河区燕岭路２４８号

电话：☎▾ 86-020-37269796

网站地址：www.top-union-china.cn

注册地址：港文咸東街50號寶恒商業中心8樓801室

两家公司从来没有联系过，没有进行过商业的谈判，商业合作等商业行为。

非常感谢你的帮忙！

黄良瑾

This is translation of the email 25.01.08

Mr. Lee, hello!

I'm Mrs. Huang from Top Union (China) Limited, I called you today in the afternoon. My company is a Chinese international trading company, and as I said my company was mixed up with an other company.
Please check my company's web site: www.top-union-china.cn

Please excuse us for bringing you inconvenience, we would like to ask your company to confirm that:
Your esteemed company: Changshu Tongsheng International Shipping Agency
and our company: Top Union (China) Limited represented by Mrs. Huang Liangjin
Our Company's trading address is 248 Yan Ling Road, Tian He District, Guangzhou City, Guangdong province, China
Telephone Number: 86-020-37269796
Web site: www.top-union-china.cn
Registered address: Unit 801 8/F, Bonham Trade Centre,50 Bonham Strand, Hong Kong

Our two company had never had any contact, any business negotiations, any business cooperation, any business relationship.

We will be very grateful for your assistance!

Huang Liangjin

发件箱

发件箱

寄件人： sales@top-union-china.cn    加入地址本　拒绝发件人　邮件头信息　邮件下载　　打印预览
收件人： tongsheng@cshs.com.cn
日　期： 2008年01月29日 15时23分
主　题： 转发：滙高（中國）有限公司
附　件：

🖂回 复　　🖂全部回复　　🖂转 发　　◉上一封　　◉下一封　　✂删 除　　移动到　　│请选择│

李先生，　你好！
请查收一下。

黄良瑾

======= 下面是转发邮件 =======
发件人： sales@top-union-china.cn
收件人： tongsheng@cshs.com.cn
抄　送：
主　题： 滙高（中國）有限公司
时　间： 2008-01-25 22:30

>李先生,你好.
>我是滙高（中國）有限公司（TOP UNION (CHINA) LIMITED)的黄小姐,我今天下午给您打过电话,我
们公司是中国的一家外贸公司,可能贵公司搞错了索赔对象.
>请登陆本公司网站是:www.top-union-china.cn
>
>然后麻烦你回馈给我,帮忙确认下：
>
>
>贵公司：Changshu Tongsheng International Shipping Agency
>
>同本公司：滙高（中國）有限公司　TOP UNION (CHINA) LIMITED　黄良瑾女士
>
>商业地址：中国广东省广州市天河区燕岭路２４８号
>
>电话：📠▾ 86-020-37269796
>
>网站地址：www.top-union-china.cn
>
>注册地址：港文咸東街50號寶恒商業中心8樓801室
>
>两家公司从来没有联系过，没有进行过商业的谈判，商业合作等商业行为。
>
>
>
>非常感谢你的帮忙！
>
>黄良瑾

Mr. Lee, hello!
Please check an email

Huang Liangjin

======below email was transferred ======
Sender: sales@top-union-china.cn
Receiver: tongsheng@cshs.com.cn
Copy:
Theme: 口口 口口口口口口口
Date: 2008-01-25 22:30


Mr. Lee, hello!

I'm Mrs. Huang from Top Union (China) Limited, I called you today in the afternoon. My company is a Chinese international trading company, and as I said my company was mixed up with an other company. Please check my company's web site: www.top-union-china.cn

Please excuse us for bringing you inconvenience, we would like to ask your company to confirm that:
Your esteemed company: Changshu Tongsheng International Shipping Agency
and our company: Top Union (China) Limited represented by Mrs. Huang Liangjin
Our Company's trading address is 248 Yan Ling Road, Tian He District, Guangzhou City, Guangdong province, China
Telephone Number: 86-020-37269796
Web site: www.top-union-china.cn
Registered address: Unit 801 8/F, Bonham Trade Centre,50 Bonham Strand, Hong Kong

Our two company had never had any contact, any business negotiations, any business cooperation, any business relationship.

We will be very grateful for your assistance!

Huang Liangjin

发件箱

发件箱

寄件人：  sales@top-union-china.cn     加入地址本   拒绝发件人   邮件头信息   邮件下载   打印预览
收件人：  tongsheng@cshs.com.cn
日　期：  2008年02月20日 14时25分
主　题：  滙高（中國）有限公司
附　件：

回复　　全部回复　　转发　　上一封　　下一封　　删除　　移动至　　请选择

您好，李先生！
麻烦您把这封邮件转交给支经理。谢谢。

支经理，　您好：
我是滙高（中國）有限公司（TOP UNION (CHINA) LIMITED)的黄小姐，我的同事邢小姐昨天下午给您
打过电话，我们公司是中国的一家外贸公司，因为运输公司搞错了索赔对象，　发生不理想的事情，法院冻结
了我们公司的资金，　为了解开我们公司的资金，　我们需要提供证据，
一封信函，在那里要写：我们两家公司从来没有联系过，没有进行过商业的谈判，商业合作等商业行为。
同时请贵公司简单解释一下，另外一家Top Union公司是什么公司，联系人是谁，电话号是多少，商业地址
是什么。这种资料能帮我们为仲裁证明我们是另外一家公司，　跟您的伙伴没有什么关系的。
如贵公司能提供此帮助，这封信函，我们将不胜感激！

我们公司的资料：
>>请登陆本公司网站是：www.top-union-china.cn
>
>>本公司：滙高（中國）有限公司 TOP UNION (CHINA) LIMITED　黄良瑾女士
>>
>>商业地址：中国广东省广州市天河区燕岭路２４８号
>>
>>电话：　86-020-37269796
>>
>>网站地址：www.top-union-china.cn
>>
>>注册地址：港咸東街50號寶恆商業中心8樓801室
>>
>>
>>
>>
>>非常感谢你的帮忙！
>>
>>黄良瑾

Hello, Mr. Lee!
Kindly ask to transfer this email to Director Zhi. Thank you.

Director Zhi, hello:
I'm Huang Liangjin, who represent Top Union (China) Limited, my colleague Mrs. Xing called
your yesterday in the afternoon. Our company is a Chinese international trading company,
because one shipping company mixed up an respondent happened bad situation, the court
attached our company's funds, and to vacate them my company needs evidences, an email,
where you can confirm that our two companies had never had any contacts, any business
negotiations and any business relationships.
Also I would like to ask you to provide us with information about that Top Union, what kind of
company is it, could give us their telephone number, trading address? This information can help
us to prove that we are a wrong company, that our company and your partner's company are two
different companies.

We will be very grateful for your help!

My company's details:
You can find all information at our web site: www.top-union-china.cn


Company's name: Top Union (China) Limited
Trading Address: 248 Yan Ling Road, Tian He District, Guangzhou city, Guangdong province,
China.