22-08/PJG

FREEHILL HOGAN & MAHAR LLP
Attorneys for TOP UNION (CHINA) LTD.
80 Pine Street, 24th
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
INDUSTRIAL CARRIERS INC.,

                      Plaintiff,

      -against-

DAYTON COMMERCIAL LIMITED a.k.a.
GALVANIZED STEEL CONSUMERS
ASSOCIATION a.k.a. GSCA a.k.a. GSCA
LIMITED a.k.a. TOP UNION,

                    Defendants.
-------------------------------------------------------x

                              **07 CV 7937 (RMB)**

                          **<u>GUTOWSKI REPLY AFFIDAVIT</u>**

PETER J. GUTOWSKI, being duly sworn, states as follows:

1.     I am an attorney admitted to practice before this Court and am a partner in the law firm of Freehill Hogan & Mahar LLP, attorneys for interested party Top Union (China) Limited (hereinafter "**Top Union China**").

2.     I submit this Reply Affidavit to respond to several of the points outlined in the Plaintiff's opposition papers, in particular, Plaintiff's position that Top Union China was the charterer of the NAVIOS HERACLES.

3.     As outlined below, this is simply not true, and the statement in the ALEXIS charter party is wrong.

4.     As the Court is, at this point, no doubt aware, the basis for the Plaintiff's restraint of our client's funds can be traced to a reference in Plaintiff's charter party with the Defendant (Dayton Commercial), that previous charters (two in total) were performed under the "account" of some entity described as "Top Union".

5.     Plaintiff claims that as a consequence of these prior charters, Top Union should be considered as an "a.k.a." of the Defendant Dayton Commercial and our client's funds should be frozen to potentially satisfy that debt.

6.     The entire premise is incorrect.

7.     Our client has denied any involvement whatsoever in any of these transactions, and is in fact a mainland China based provider of soft goods such as fabric, pens, inexpensive handbags, small beauty items, etc. who has never chartered a vessel (See e.g. Ex. 6 to Huang Reply Declaration showing website with the types of soft-good products that Top Union China sells.)

8.     With its assets frozen, however, it has been forced into the position of proving the negative, and in that respect, the statement in the ALEXIS charter party – that Hyundai Merchant Marine chartered the vessel M/V NAVIOS HERACLES to an entity called Top Union, is inaccurate.  (The allegations with respect to the M/V MANAS are dealt with in the accompanying Huang Reply Declaration so I will not address them.)

**Investigation with Hyundai Merchant Marine**

9.     As outlined above, in order to prove the negative, Top Union China has been communicating with the various agents, brokers and Owners involved in the two prior charters to provide evidence to this Court that the Plaintiff has seized funds of an innocent and uninvolved party.

10.    I conducted the investigation/inquiry with Hyundai Merchant Marine, the disponent Owners of the M/V NAVIOS HERACLES, to verify whether in fact it had chartered the vessel to Top Union.  As outlined below, it had not, that information in the ALEXIS charter is not accurate, and I set forth below the background to that investigation.

11.    Initially, I contacted Hyundai Merchant Marine directly in Korea asking them to verify whether in fact they had ever chartered the NAVIOS HERACLES to Top Union.  A copy of my email dated February 12, 2008 to Mr. Paik in Hyundai Merchant Marine legal office is attached as Ex. 1.

12.    The following day, Mr. Paik responded that he was not in a position to release any requested information because it was considered confidential.  (See Ex. 2, two email responses from Paik.)

13.    In view of this impasse, we drafted and served on Hyundai's local New Jersey office a subpoena requesting this information.  A copy of the initial subpoena we served is attached as Ex. 3 and requested information and documents regarding the charter of the NAVIOS HERACLES to an entity named Top Union.

14.    As a courtesy, I also informed Mr. Paik of our service of the subpoena. (See Ex. 4.)

15.    Hyundai Merchant Marine subsequently retained New York counsel Mr. Randy Donatelli of Cichanowicz, Callan & Keane.  Mr. Donatelli responded to the initial service of the subpoena in a fax dated February 15, 2008, confirming that Hyundai Merchant Marine had not chartered the NAVIOS HERACLES to Top Union.  A copy of his fax confirmation is attached as Ex. 5.

16.     In an effort to discover the actual name of the entity to whom Hyundai Merchant Marine had chartered the vessel, which Mr. Donatelli indicated he would not be in a position to disclose, we served a second subpoena on Hyundai calling for this information. (See Ex. 6.)

17.     In response to that subpoena, Mr. Donatelli first requested that we sign an extensive Confidentiality Agreement which we did. (Ex. 7.)

18.     He then disclosed a copy of the charter party identifying the charterer (a major German entity).  In view of the need to place the charter party under seal if we were to show it to the Court, I have elected not to provide the actual charter party as an exhibit lest we end up spending additional sums arranging for the document to be placed under seal and later arranging for it to be destroyed.  The document has been disclosed to the plaintiffs as well so there is no debate that it is not with Top Union or any name even remotely close to that, but is a recognized and established German based charterer.  (If the Court would like to see a copy of the charter we will arrange to have it placed under seal and delivered to Chambers, but there is not and will be no debate between the parties that it was not Top Union.)

19.     Mr. Tisdale subsequently made inquiry with Mr. Donatelli as to whether perhaps our request for information in 2007 arbitrarily limited the scope of the subpoena and inquired whether Hyundai Merchant Marine had perhaps chartered the vessel to a Top Union entity sometime before 2007.  (See Ex. 8.)

20.     Mr. Donatelli subsequently confirmed that Hyundai Merchant Marine has never chartered any vessel to an entity called Top Union.  (See Ex. 9.)

21.    It goes without saying that neither we or our client have any idea where the erroneous information contained in the ALEXIS charter party - which purports to state that a Top Union entity chartered the NAVIOS HERACLES from Hyundai Merchant Marine - came from, but it is clearly not true.

22.    Hyundai Merchant Marine has confirmed that it never chartered to any entity named Top Union, let alone our client, Top Union China.

23.    As a consequence, the premise relating to the NAVIOS HERACLES on which Plaintiff supports its "a.k.a." case against our client is completely inaccurate and should have been investigated by the Plaintiff before it initiated its restraint on this basis.

**Investigation Regarding the M/V MANAS**

24.    With respect to the investigation undertaken by the clients directly in an effort to prove a negative, so to speak, concerning their utter lack of involvement in the other vessel, the M/V MANAS, our clients make contact with the brokers in that case, including the Neva Delta Shipping and Pacmar, and others including agents.

25.    The results of that investigation are set forth in detail in the accompanying Huang Reply Declaration which confirms that our client had nothing whatsoever to do with that charter party either or the bogus LOI which was produced by the brokers who acted for the owner of the MANAS.

26.    With respect to Neva Delta, however, I should mention that Neva Delta has been a member of the BIMCO organization for almost 10 years.

27.    BIMCO is the world's largest private shipping organization with an excess of 2,700 members worldwide.

28.    It is a major distributor of information, publications and all sorts of maritime activity including chartering information, cargo information, marine security issues, etc.

29.    It issues notices to members regarding fraud situations, bulletins regarding security and sensitive cargo, etc. provides recommended text for contracts and bills of lading and enables its members to subscribe to a service whereby parties in the maritime trade can report to BIMCO defaulting entities.

30.    One of the main benefits of BIMCO membership is the ability to check on perspective business partners as to whether they have been reported for non-payment of freight, demurrage or commissions or have been late or otherwise failed to honor arbitration or legal decisions, which services in effect acts like an international credit report service. See, generally BIMCO website at www.bimco.org.

31.    Neva Delta has been a member of BIMCO for almost 10 years. This serves to reflect the legitimacy of that company as a recognized steamship agency. Like Pacmar, who has now confirmed that it never had any direct contact with our client in connection with the MANAS, Neva Delta has confirmed that it too has never dealt with Top Union China in any respect, let alone the MANAS. These facts are all detailed in the Huang Reply Declaration.

32.    Further, and in view of Neva Delta's long standing BIMCO membership, it is respectfully submitted that the Plaintiff should have initiated its search for the real charterer there, if it wanted to pursue its "a.k.a." theory of liability, instead of simply throwing the name "Top Union" into the caption and seizing assets of an unrelated innocent third party.

33.    Indeed, Neva Delta has expressed a willingness to provide information to the Plaintiff Industrial Carriers about the actual charterers (see Ex. 3 to Huang Declaration confirming Neva Delta willingness to respond to the "shipowners" [i.e. Plaintiff, Industrial Carriers] through the established brokerage channels, namely Neva Delta.

**The Plaintiff has had the information all along as to who the real Charterer is.**

34.    In a further effort to prove the negative, so to speak, we have been repeatedly requesting from counsel for the Plaintiff information on where the Plaintiff had received its charter freight payments when it chartered the ALEXIS to the Defendant Dayton. (See Ex. 10, emails to Plaintiff's counsel re documents and information about these charterers.)

35.    Earlier this week, Plaintiff's counsel forwarded to us a copy of the remittance details for the freight that it received from the Defendant Charterer Dayton in respect to the charter of the ALEXIS, and that document tells the story. (See Ex. 11.)

36.    For the Court's guidance, when the Plaintiff Industrial Carriers receives money, it has the funds transferred into an account in the name of "Weaver Investments Inc." and that name appears as the party receiving the freight. (See page 2 of Ex. 11.)

37.    The more revealing aspect, however, is the party that paid the freight of $2,648,762.64.

38.    At page 1 of Ex. 11, the payor is identified as Unicon Trading Limited from Belize City, Belize and the transfer of funds came from Unicon Trading account at a bank called FBME Bank in Cyprus.

39.    This is the same entity that paid the freight on the MANAS. (See Ex. 5 to Huang Reply Declaration and ¶'s 25 through 34 showing the two freight payments on the MANAS coming from Unicon Trading via FBME Bank going to Paksu, the Owner of the MANAS.)

40.    Thus, long before this action was filed the Plaintiff knew that its charter party with Dayton was somewhat illusory because it wasn't receiving the freight from Dayton, but rather from this Belize based entity Unicon Trading who had an account with this FBME Bank in Cyprus.

41.    If the Plaintiff had bothered to do a reasonable investigation as to who the real charterer was, its own documents (including Ex. 11 hereto) would have identified Unicon Trading as the real party behind the curtain, and if they had bothered to check with Paksu, the Owner of the MANAS, before they filed their Complaint naming "Top Union", they would have similarly found out that no such entity had actually chartered the ship (or the NAVIOS HERACLES either) and the real charterer was this entity Unicon Trading.

42.    The Plaintiff was comfortable, however, relying on the Paksu charter party on the MANAS as the basis to interject the name Top Union into this case, but did no real investigation as to whether Top Union was in fact the real charter or the entity who paid the freight in that case.

43.    The best evidence of who is behind a fictitious name is revealed by an examination of where the money comes from. Our client, Top Union China, had no concerns about that investigation because it knew, and it has now demonstrated, that it had no connection with any of these charters. Here, the evidence (the money) shows that

this entity Unicon Trading is the charterer behind the Dayton/Top Union curtain, but it is certainly not Top Union China, an innocent soft goods distributor in mainland China who has had its assets frozen in a wrongful and unjustifiable attachment.

44.    There is no factual basis upon which our client's funds should be restrained.  They had no involvement in any of these contracts and have never even so much as chartered a ship.  Top Union China should receive compensation from the Plaintiff in the way of their costs and legal fees in having to prove this negative in circumstances where the Plaintiff should have done the investigation at the outset and should be chasing Unicon Trading Limited.

_____
Peter J. Gutowski (PG 2200)

Sworn to before me this
27th day of February, 2008

_____
NOTARY PUBLIC

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/ 08

# Ex. 1

## GUTOWSKI, PETER

**From:**    GUTOWSKI, PETER
**Sent:**    Tuesday, February 12, 2008 5:34 PM
**To:**    'icbcw@hmm21.com'
**Subject:** Inquiry from Freehill Hogan in New York


RE:    Inquiry re Documents from *Navios Heracles* Fixture

Our Ref: 22-08/PJG

Dear Mr. Paik,

Bill Juska, my partner here at Freehills, gave me your name in the hopes that perhaps you can help me with a situation I am dealing with here in NY. Let me thank you in advance for any assistance you can provide. The situation is as follows.

We represent a company call Top Union (China) Ltd. whose assets have been frozen in New York in connection with a charter party dispute involving the vessel ALEXIS. The claimant in that case is a company called Industrial Carriers who has a charter party claim against a company called Dayton. Industrial Carriers obtained an order of attachment in NY against Dayton, the charterer, and several other entities which it claims are alias of Dayton, including a company called "Top Union".

Our client (i.e. Top Union (China) Ltd.), is in the soft goods business but has no involvement in shipping. However, it's asserts were frozen. We are trying to get their assets released.

In the ALEXIS charter party, there is a notation that several prior trips were done for the account of "Top Union", including one involving a charter from Hyundai Merchant Marine on a vessel called the Navios Heracles. HMM is described as being disponent Owner and the charter is this other "Top Union" entity. This is where I need your help.

We would like to show the Court who the Top Union entity was in that prior fixture with you (HMM) so that it will become clear it was not the same entity/client that we now represent and whose funds were frozen. To the extent that the Top Union entity obviously must have paid freight to HMM, and no doubt had operational correspondence, we are hoping to be able to secure that information (or some documents) from you so we can show it to the Judge. The current case obviously has no involvement with HMM and the Navios Heracles charter we understand is long since over and settled (I understand it was a charter done sometime in early or mid 2007).

Would it be possible for you to check with your chartering department and try to secure the following information:

1.  Copy of transfer details under which freight was paid from "Top Union" to HMM on Navios Hercules.

2.  Identity of the bank from which the freight was paid and the party remitting the payment to HMM.

3.  Copy of some operational emails or faxes showing exchanges with Top Union which would shed some light on where this entity was located when they were communicating with you or perhaps who their agent was.

I am very grateful to you for any assistance you can provide.

I know this is an imposition but you can appreciate that our client is in the difficult position of having to try to prove a negative – and by that I mean that they are not the Top Union party who previously chartered the vessel Navios Hercules from you, and hence is not connected with Dayton. Since they were not that party, it is hard for them to prove the negative because they have no documents since they were not involved. This is the reason why we are coming to you to try to get some background information on this Top Union entity so we can show the Court that it is not us.

Thanks again for your help and anything you can do to assist would be greatly appreciate.

Finally, we are under a tight deadline and must submit our papers by this Friday. Therefore, if there is any way you could attend to this on your end tomorrow and see what you could dig up for me I would be most grateful.

Otherwise, Bill passes along his regards.

Thanks again for your assistance and I look forward to hearing from you in the hopes you can help us in this situation.

Kind regards,
Freehill Hogan & Mahar LLP
Peter J. Gutowski

# Ex. 2

## GUTOWSKI, PETER

**From:** Chris Paik [icbcw@hmm21.com]
**Sent:** Wednesday, February 13, 2008 3:36 AM
**To:** GUTOWSKI, PETER
**Subject:** Re: Inquiry from Freehill Hogan in New York

Dear Mr. Gutowski:

I was just told that the requested information/documents (including charter party) cannot be released. It is my regret that I cannot be of assistance.

Sincerely,
Chris Paik / Legal Affairs & Insurance Team
Hyundai Merchant Marine Co., Ltd.
# 66, Chockson-dong, Jongro-gu,
Seoul 110-052 Korea
(T) 82 2 3706 6043
(F) 82 2 735 8437
email: icbcw@hmm21.com

PLEASE INCLUDE OUR CLAIM REFERENCE ON ALL FUTURE CORRESPONDENCE AND REPLY TO OUR TEAM E-MAIL AT: legal@hmm21.com.

# GUTOWSKI, PETER

**From:** Chris Paik [icbcw@hmm21.com]
**Sent:** Wednesday, February 13, 2008 2:23 AM
**To:** GUTOWSKI, PETER
**Subject:** Re: Inquiry from Freehill Hogan in New York

Dear Mr. Gutowski:

It is quite a pity to hear that your client as the wrong party has been involved in the wrong argument.

Our Biz. team has been contacted by Industrial Carriers who requested us to release the similar information of "TOP UNION". As the information has been considered as confidential one, the request was refused to accept. On the same basis, I was told by our Biz. team that the requested information cannot be released.

I asked if there be a possibility to release the charter party between HMM and Top Union, and I may have their final answer tomorrow morning. If their answer is positive, I may let you have a copy of the charter party instead of the requested documents/information.

Meantime, please also pass my regards to Mr. Bill Juska and Mr. Mike Unger.

Sincerely,
Chris Paik / Legal Affairs & Insurance Team
Hyundai Merchant Marine Co., Ltd.
# 66, Chockson-dong, Jongro-gu,
Seoul 110-052 Korea
(T) 82 2 3706 6043
(F) 82 2 735 8437
email: icbcw@hmm21.com

PLEASE INCLUDE OUR CLAIM REFERENCE ON ALL FUTURE CORRESPONDENCE AND
REPLY TO OUR TEAM E-MAIL AT: legal@hmm21.com.

# Ex. 3

AO 88 (Rev. 11/91) Subpoena in a Civil Case

## *United States District Court*

**SOUTHERN**　　　　　**DISTRICT OF**　　　　**NEW YORK**

INDUSTRIAL CARRIERS, INC.,

**SUBPOENA IN A CIVIL CASE**

V.

CASE NUMBER: 07 CV. 7937 (RMB)

DAYTON COMMERCIAL LIMITED a.k.a.
GALVANIZED STEEL CONSUMERS ASS'N
a.k.a. GSCA a.k.a. GSCA LIMITED
a.k.a TOP UNION,

TO: Hyundai Merchant Marine c/o Hyundai American Shipping Agency Inc.
　　300 Sylvan Ave., Englewood Cliffs, NJ  07632

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects):
**SEE ANNEX A**

| PLACE<br>FREEHILL HOGAN & MAHAR<br>80 Pine Street, 24th Floor<br>New York, NY  10005 | DATE AND TIME<br>February 19, 2008<br>IN LIEU OF APPEARING YOU CAN E-MAIL OR FAX US THE<br>RECORDS: gutowski@freehill.com;<br>molina@freehill.com;  Fax (212) 425-1901 |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

　　Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>　　　Attorney for Top Union (China) Limited<br>　　　Peter Gutowski, Partner | DATE<br><br>February 13, 2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Peter J. Gutowski, ESQ.  FREEHILL HOGAN & MAHAR, LLP
80 Pine Street, 24th Floor New York, NY  10005  (Tel: 212-425-1900)

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

NYDOCS1/299014.1

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

Date

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transactions business in person, except that,

subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

### ANNEX A

1. A copy of the charter fixture file relating to the 2007 charter of the M/V NAVIOS HERACLES from Hyundai Merchant Marine to Top Union.

2. A copy of all bank transfer and remittance documents reflecting all payments from, for or on behalf of Top Union in connection with the charter contract referred to in paragraph 1 above, including but not limited to payments of freight and/or demurrage.

3. Copies of the operational communications (including but not limited to faxes and emails) with Top Union and/or its agent(s) relating to the performance of the charter referred to in paragraph 1 above.

Ex. 4

## GUTOWSKI, PETER

| | |
|---|---|
| **From:** | GUTOWSKI, PETER |
| **Sent:** | Wednesday, February 13, 2008 6:55 PM |
| **To:** | 'icbcw@hmm21.com' |
| **Cc:** | 'legal@hmm21.com' |
| **Subject:** | Inquiry re Documents from Navios Heracles Fixture |

RE:     Inquiry re Documents from *Navios Heracles* Fixture

Our Ref: 22-08/PJG

Dear Chris,

Thank you very much for your two email communications and for your efforts in trying to secure the documentation/information I mentioned.

In view of the fact that your Business Team did not feel that it was in a position to release the information voluntarily, we have served a subpoena on your local agent here in New Jersey requesting that same information. I wanted to send this email to you, however, to alert you to the fact that we had done this so that it would not come as a surprise to you. I hope that you will appreciate the reason why we had to do this.

As I explained, our client's funds have been restrained and they are, in essence, being asked to prove a negative. This is obviously difficult to do since our client didn't have any involvement in the prior charters, and hence has no documents to prove that point, and this is the reason why we had come to you for that information.

The subpoena was served and made returnable for early next week and calls for essentially the same information I had asked of you. The items requested include the following:

1. A copy of the charter fixture file relating to the 2007 charter of the M/V NAVIOS HERACLES from Hyundai Merchant Marine to Top Union.

2. A copy of all bank transfer and remittance documents reflecting all payments from, for or on behalf of Top Union in connection with the charter contract referred to in paragraph 1 above, including but not limited to payments of freight and/or demurrage.

3. Copies of the operational communications (including but not limited to faxes and emails) with Top Union and/or its agent(s) relating to the performance of the charter referred to in paragraph 1 above.

I apologize for the intrusion but we have no other choice in these circumstances other than to try to gather the information to prove our client's innocence and I hope you will understand why we have had

2/26/2008

to take this step.

Please feel free to have your business team or legal team contact me if they would like to discuss this and if there is anything you might be able to do to expedite the transmission of this information, it would be greatly appreciated because we are under a very tight deadline to respond to the Court.

Thank you for your cooperation.

Kind regards,
Freehill Hogan & Mahar LLP
Peter J. Gutowski

Ex. 5

LAW OFFICES OF

## CICHANOWICZ, CALLAN, KEANE, VENGROW & TEXTOR, LLP

61 BROADWAY, SUITE 3000

NEW YORK, N. Y. 10006-2802

PAUL M. KEANE
STEPHEN H. VENGROW[1]
JAMES M. TEXTOR*
JOSEPH F. DE MAY, JR.
RANDOLPH H. DONATELLI#
PATRICK MICHAEL DeCHARLES II[1]

JESSICA A. DE VIVO*
IRENE M. ZANETOS°

[ALSO ADMITTED TO DISTRICT OF
  COLUMBIA, MAINE & NEW JERSEY
*ALSO ADMITTED TO PENNSYLVANIA
°ALSO ADMITTED TO GEORGIA
[ALSO ADMITTED TO NEW JERSEY & TEXAS
*ALSO ADMITTED TO NEW JERSEY

TELEPHONE: (212) 344-7042
TELEFAX: (212) 344-7285
TELEFAX: (212) 344-3988

NEW JERSEY OFFICE
75 MONTGOMERY STREET, SUITE 200
JERSEY CITY, NJ 07302
(201) 209-0960

A.J. MARINO
OF COUNSEL

BYRON KING CALLAN
(1914 - 1992)
VICTOR S. CICHANOWICZ
(1918 - 1989)

## T E L E F A X

**February 15, 2008**

DESTINATION FAX NO.:        **(212) 425-1901**
TO:                         Freehill, Hogan & Mahar
ATTN:                       Peter Gutkowski, Esq.

DESTINATION FAX NO.:        **(212) 869-0067**
CC:                         Tisdale Law Offices, LLC
ATTN:                       Lauren Davies, Esq.

FROM:                       Randolph H. Donatelli

RE:                         Industrial Carriers v. Dayton Commercial
                            S.D.N.Y. 07 Civ. 7937

Dear Peter:

    As I mentioned in our telephone conversation of yesterday, we represent Hyundai Merchant Marine ("HMM") in regard to your subpoena dated February 13, 2008. We write on a without prejudice basis and reserve all defenses and objections to that subpoena.

    As discussed yesterday, the documents requested in Annex A to your subpoena do not exist for the basic reason that HMM's 2007 charter party for the vessel NAVIOS HERAKLES was not with Top Union. Although, the charter party contains a confidentially provision prohibiting disclosure of its terms, we can advise that the charterer is a German company with a name entirely different than "Top Union".

                            Best regards,

                            CICHANOWICZ, CALLAN, KEANE,
                            VENGROW & TEXTOR, LLP

                            Randolph H. Donatelli

RHD/js
Encl.

# Ex. 6

AO 88 (Rev. 11/91) Subpoena in a Civil Case

## United States District Court

**SOUTHERN**                 **DISTRICT OF**                 **NEW YORK**

INDUSTRIAL CARRIERS, INC.,

**SUBPOENA IN A CIVIL CASE**

V.

CASE NUMBER: 07 CV. 7937 (RMB)

DAYTON COMMERCIAL LIMITED a.k.a.
GALVANIZED STEEL CONSUMERS ASS'N
a.k.a. GSCA a.k.a. GSCA LIMITED
a.k.a TOP UNION,

TO: Hyundai Merchant Marine c/o Hyundai American Shipping Agency Inc.
    65 Challenger Road, 4th Fl., Ridgefield Park, NJ  07660

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date and time specified below (list documents or objects):
    **SEE ANNEX A**

| PLACE | DATE AND TIME |
|---|---|
| FREEHILL HOGAN & MAHAR<br>80 Pine Street, 24th Floor<br>New York, NY  10005 | February 19, 2008<br>IN LIEU OF APPEARING YOU CAN E-MAIL OR FAX US THE RECORDS: gutowski@freehill.com;<br>molina@freehill.com;  Fax (212) 425-1901 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| **Attorney for Top Union (China) Limited**<br>Peter Gutowski, Partner | **February 15, 2008** |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
**Peter J. Gutowski, ESQ.  FREEHILL HOGAN & MAHAR, LLP**
**80 Pine Street, 24th Floor New York, NY  10005  (Tel: 212-425-1900)**

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

NYDOCS1/299168.1

## ANNEX A

1.  A copy of the charter fixture file relating to the 2007 charter of the M/V NAVIOS
    HERACLES from Hyundai Merchant Marine.

Ex. 7

TISDALE LAW OFFICES     Fax:2032541641     Feb 25 2008  11:59     P.02
FROM :CCKUT                          FAX NO. :12123447285     Feb. 25 2008 11:20AM P 2

FEB-21-08   10:19AM  FROM-                          T-118   P:002/008   F-893

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INDUSTRIAL CARRIERS, INC.                          07 Civ. 7937 (RMB)

                                Plaintiff,

            - against -                          **STIPULATION**

DAYTON COMMERCIAL, LTD, et al.

                                Defendants.

THE UNDERSIGNED PARTIES HEREBY STIPULATE THAT:

1. The charter party dated July 13, 2007 for the vessel NAVIOS HERAKLES to which Hyundai Merchant Marine Co. Ltd. is a party (hereinafter, "the charter party") shall be kept confidential and disclosed only as provided herein.

2. The charter party may be used only for discovery, trial preparation, trial, and subsequent appeals of this action and not for any other action, proceeding, or other purpose, except otherwise required by law or court order.

3. The charter party shall not be distributed to or communicated in any manner, directly or indirectly, to anyone other than those identified in this stipulation.

4. Access to the charter party, and to the information contained therein (including charts, summaries of extracts derived therefrom) shall be restricted to the following:

   a. Attorneys of record in this action and their partners or associate attorneys, when working in connection with this action;

TISDALE LAW OFFICES    Fax:2032541641    Feb 25 2008  11:59    P.03
FROM :CCKUT    FAX NO. :12123447285    Feb. 25 2008 11:20AM P. 3

FEB-21-08    10:18AM    FROM-    T-118    P.005/005    F-883

b. Any persons regularly employed by such attorneys or their firms, when working in connection with this action under the direct supervision of partners or associate attorneys of said firms;

c. Any independent expert, local counsel or solicitors, consultant or similar person who has been retained to provide expert advice, technical consultation or testimony in this action;

d. The Court;

e. Court reporters or other official personnel reasonably required for the preparation of transcript of testimony;

f. Any person regularly employed by any of the parties to this action, or their underwriters, who as part of his job consults with the attorneys or solicitors involved in this case;

g. Current officers, directors, agents, employees of and consultants to any party who are deposed or who are directly and personally involved in the prosecution or defense of this action;

h. Former officers, directors, managing agents and employees of any party who are deposed or who are directly and personally involved in the prosecution or defense of this action;

i. Any underwriter or other insurance representative acting on behalf of any party in the prosecution or defense of this action.

5. Prior to the disclosure of the charter party to any person identified in paragraph 4(c) of this stipulation, the attorney making such disclosure shall furnish a copy of this Stipulation to the person, firm or corporation to whom the charter party is to

» 2 »

be disclosed, and shall advise such person or entity that, pursuant to this Stipulation, such charter party, or the information contained therein, may not be divulged or disseminated, in any way, to any other person, firm or corporation. No person to whom the charter party is disclosed may disclose same to any person not entitled, under the terms of this Stipulation, to receive it. Each person, to whom such disclosure is made shall acknowledge receipt of this Stipulation and their understanding of its terms by signing a copy of it as acknowledgement. All such signed acknowledgements shall be retained by the attorney in charge for the party disclosing the charter party and shall be provided to counsel of the party who originally produced the charter party at the conclusion of this litigation.

6.    In the event that any motion papers or other documents filed with the Court disclose the Report, then such papers shall be filed with the Court under seal or in any manner directed or approved by the Court to ensure that the charter party remains confidential and does not become part of the public record.

7.    The charter party including all copies thereof, shall be returned to Cichanowicz, Callan, Keane, Vengrow & Textor, LLP at the conclusion of this litigation. No copies thereof shall be retained, for any reason whatsoever, by any person, firm or corporation, including attorneys, without the written consent of Cichanowicz, Callan, Keane, Vengrow & Textor, LLP.

*[handwritten]* or deleted or destroyed, retained as Confidential until destroyed in the regular course of the parties' record keeping or

- 3 -

TISDALE LAW OFFICES    Fax:2032541641    Feb 25 2008  12:00    P.05
FROM :CCKUT                          FAX NO. :12123447285         Feb. 25.2008 11:20AM P 5

FEB-21-08  10:18AM  FROM-                                    T-118  P.005/005  F-693

8.  Any notes, memoranda, summaries, index or compilations prepared by any

person, firm or corporation, which are wholly or in part upon the examination or

review of the charter party shall not be disseminated to anyone who is not

authorized to examine the Report under the terms of this Stipulation.

Dated: New York, New York
       February 25, 2008

Tisdale Law Offices, LLC              Freehill, Hogan & Mahar
Attorneys for Plaintiff               Attorneys for Defendant Top Union (China)
                                      Ltd.

By:                                   By:
   Lauren Davies, Esq. (LD- )            Peter Gutowski, Esq. (PG -2200)
11 W. 42nd Street, Suite 900          80 Pine Street
New York, New York 10036              New York, New York 10005-1751
(212) 354-0025                        (212) 425-1901

   Thomas L. Tisdale (TLT5263)

-4-

# Ex. 8

## GUTOWSKI, PETER

| | |
|---|---|
| **From:** | Thomas Tisdale [ttisdale@tisdale-law.com] |
| **Sent:** | Monday, February 25, 2008 5:48 PM |
| **To:** | GUTOWSKI, PETER; rdonatelli@cckvt.com |
| **Cc:** | Lauren C. Davies |
| **Subject:** | RE: Industrial Carriers v. Dayton, TLO Ref 1739 |

Gentlemen;

In reviewing the charter party which Randy sent over, I notice that it post-dates the fixture in question. Randy, can you reconfirm that HMM did not charter the vessel sometime between 2005 and early 2007 to Top Union for the carriage of steel coils from Changshu and Dalian to St. Petersburg? If not Top Union, did they charter the NAVIOS HERACLES to anyone for a similar voyage in that time period?

Thank you, Randy.

Tom


*Thomas L. Tisdale*

*11 West 42nd Street, Suite 900*

*New York, NY 10036*

*(212) 354-0025*

*Fax: (212) 869-0067*

*10 Spruce Street*

*Southport, CT 06890*

*(203) 254-8474*

*Fax: (203) 254-1641*

\*\*\*NOTICE\*\*\*
*This message is being sent by a lawyer. It may contain attorney-client or attorney work-product information subject to legal privilege. If you receive this email in error, please notify the sender. Thank you.*

Ex. 9

## GUTOWSKI, PETER

| | |
|---|---|
| **From:** | Randolph Donatelli [rdonatelli@cckvt.com] |
| **Sent:** | Tuesday, February 26, 2008 10:43 AM |
| **To:** | .Thomas Tisdale |
| **Cc:** | GUTOWSKI, PETER |
| **Subject:** | Re: M/V NAVIOS HERACLES |

Dear Tom:

We refer to your below email of yesterday. HMM previously advised us that it never had a charter party with Top Union. HMM is not a party to your case and does not wish to have further involvement in this matter.

Best regards,

Randolph H. Donatelli
Cichanowicz, Callan, Keane, Vengrow & Textor, LLP
61 Broadway, Suite 3000
New York, New York 10006
Phone: (212) 344-7042
Fax: (212) 344-7285
Email: rdonatelli@cckvt.com

---

**From:** Thomas Tisdale [mailto:ttisdale@tisdale-law.com]
**Sent:** Monday, February 25, 2008 5:48 PM
**To:** GUTOWSKI, PETER; Randolph Donatelli
**Cc:** Lauren C. Davies
**Subject:** RE: Industrial Carriers v. Dayton, TLO Ref 1739

Gentlemen;

In reviewing the charter party which Randy sent over, I notice that it post-dates the fixture in question. Randy, can you reconfirm that HMM did not charter the vessel sometime between 2005 and early 2007 to Top Union for the carriage of steel coils from Changshu and Dalian to St. Petersburg? If not Top Union, did they charter the NAVIOS HERACLES to anyone for a similar voyage in that time period?

Thank you, Randy.

Tom

*Thomas L. Tisdale*

*11 West 42nd Street, Suite 900*

*New York, NY 10036*

*(212) 354-0025*

2/26/2008

Fax: (212) 869-0067

10 Spruce Street

Southport, CT 06890

(203) 254-8474

Fax: (203) 254-1641

\*\*\*NOTICE\*\*\*
This message is being sent by a lawyer. It may contain attorney-client or attorney work-product information subject to legal privilege. If you receive this email in error, please notify the sender. Thank you.

Ex. 10

## GUTOWSKI, PETER

| | |
|---|---|
| **From:** | GUTOWSKI, PETER |
| **Sent:** | Thursday, February 14, 2008 2:18 PM |
| **To:** | 'ttisdale@tisdale-law.com'; 'ldavies@tisdale-law.com' |
| **Subject:** | Top Union, |

Dear Tom and Lauren,

Where do we stand with the docs/info requested from Plaintiff?
Please forward same now as we are supposed to be filing our response tomorrow.

Thanks
Pete

**GUTOWSKI, PETER**

| | |
|---|---|
| **From:** | GUTOWSKI, PETER |
| **Sent:** | Tuesday, February 19, 2008 3:01 PM |
| **To:** | 'Lauren C. Davies' |
| **Subject:** | RE: TOP UNION |

Lauren,

Do you have the rest of the documents we have been requesting?  Specifically, do you have the freight remittances for the Alexis and Vinshin Iron contracts?  These documents are certainly in your client's possession - they were the D-Owners.  It is very unfair for them to continue to hold our client's funds and withhold this information.

Regards
Pete

## GUTOWSKI, PETER

**From:**  GUTOWSKI, PETER
**Sent:**  Thursday, February 21, 2008 6:15 PM
**To:**  'ldavies@tisdale-law.com'; 'ttisdale@tisdale-law.com'
**Subject:** Industrial Carriers

Re:     Industrial Carriers Inc. v.
         Dayton Commercial Limited et al.
         07 CV 7937 (RMB)

Our Ref: 22-08/PJG

Dear Lauren and Tom,

I have not received any further documents from you, in particular, the copies of the wire transfer details for the payment of freight on the ALEXIS and the VINISHAN IRON.  This is becoming increasingly disturbing because, as you know, it is our client's position that they had nothing whatsoever to do with any of these defendants or transactions, and they have improperly been targeted as a defendant merely because of the similarity in name and the fact that their registered address appears on the web.

It is clear that the plaintiff knows the source from which it received freight on at least two of these charters, the ALEXIS and the VINISHAN IRON, and I can only conclude that their reluctance to turn over this information flows from the fact that it reveals that our clients had no prior involvement, the freight came form someone else, and that a reasonable investigation by the plaintiff would have revealed this.

It is not fair, and indeed an abuse of process for your client to maintain its current position and to continue to hold our client's funds, yet withhold the information and evidence which will reveal the identity of the party with whom your client has contracted, corresponded and received the freight. Please send that information and documentation immediately.

Regards,
FREEHILL HOGAN & MAHAR LLP
Pete

# Ex. 11

FROM :                          FAX NO. :2108940507              05 SEP  2007 01:07PM  P4

From:++30 2104290760     Page: 10/12     Date: 4/9/2007 6:55:44 II

H38
Final Image
H16

| | |
|---|---|
| TRN TT MNY15B075067  Msg ID 158364440 | Captured 08JUN07  6:27 PIMI      S |
| Remit Bank MMBI MNY   HSBC BANK USA NA | Interpreted 07JUN07 14:59 |
| Msg Type    SWT 103   HEAD OFFICE NEW YORK | Related TRN |
| RemitAmt USD    2,648,747.64 Ex Rate | 0.7422527 T-Rate |
| Cr Amt   USD        Ex Rate | T-Rate |
| Orig Amt  USD    2,648,762.64 Ex Rate | Oper Code: CRED |

Value Date 08062007    Dr Reim Co

Cover      Dr A/C 066 905027 440

Debit Amt  USD

Stamp                    Post

Narrative 100203CY

Contra Entry (T-Tfr/TT/D-DD/O-CO

Exception/Information Messages:

Cr BOA Cust Straigh Thru Thresh

LCY TT Exceeds Threshold - Appro

Additional information found for

F1-Exit  Enter-Next Page  F3-Fir

────I/W MESSAGE TEXT────

{1:F01MIDLGRAAAXXX8091765261}

{2:01030958070607MRMDUS33DXXX048576

{3:{108:071580074685}}

OSN:158364440

ISN:0485767597

20: TT MNY158075067

23B:CRED

32A:07JUN07 USD        2,648,747.64

33B:USD2648762,64

50K:/CY2111501002073990USDCACC001

UNICON TRADING LIMITED

1 MAPP STREET                        +

Enter-Exit

FROM :                          FAX NO. :2108940507          05 SEP 2007 01:07PM P5

From: ++30 2104290760    Page: 11/12    Date: 4/9/2007 8:55:44 II

H38
Final Image
H16
TRN TT MNY158075067     Msg ID 158364440        Captured 08JUN07  6:27 PIMI        $

Remit Bank MMBI MNY     HSBC BANK USA NA         Interpreted 07JUN07 14:59

Msg Type    SWT 103     HEAD OFFICE NEW YORK              Related TRN

RemitAmt USD       2,648,747.64 Ex Rate          0.7422527 T-Rate

Cr Amt   USD                    Ex Rate                    T-Rate

Orig Amt  USD       2,648,762.64 Ex Rate               Oper Code: CRED

Value Date 08062007   Dr Reim Co ┌─────────I/W MESSAGE TEXT─────────
┌─
Cover   Dr A/C 066 905027 440   │   BELIZE CITY

Debit Amt  USD                  │ 52A:CHASUS33

Stamp                Post       │ 53D:/000047791

Narrative 100203CY              │   HSBC BANK PLC ATHENS BRANCH

Contra Entry (T-Tfr/TT/D-DD/O-CO│   109-111 MESSOGION AVENUE

Exception/Information Messages:  │   GR-115 26 ATHENS GREECE

Cr BOA Cust Straigth Thru Thresh │ 59: /GR6707100010000001066687071

LCY TT Exceeds Threshold - Appro │   WEAVER INVESTMENTS INC

Additional information found for │   P.O.1405 MAJURO MH96960

                                │   MARSHALL ISLANDS

                                │ 70: /RFB/SWF OF 070607

                                │   PAYMENT FOR FREIGHT SERVICES FREIGH +

                                │                         Enter-Exit

F1-Exit  Enter-Next Page  F3-Fir └──────────────────────────────────

This fax was received by GFI FAXmaker fax server. For more information, visit: http://www.gfi.com

H38
Final Image                                        Captured 08JUN07   6:27 PIMI      S
H16
TRN TT MNY158075067      Msg ID 158364440          Interpreted 07JUN07 14:59

Remit Bank MMBI MNY      HSBC BANK USA NA           Related TRN

Msg Type    SWT 103      HEAD OFFICE NEW YORK

RemitAmt USD       2,648,747.64 Ex Rate       0.7422527 T-Rate

Cr Amt   USD              Ex Rate                    T-Rate

Orig Amt   USD     2,648,762.64 Ex Rate          Oper Code: CRED

Value Date 08062007    Dr Reim Cc ┌──────────I/W MESSAGE TEXT──────────

Cover    Dr A/C 066 905027 440  |    T INVOICE DATED 31/05/2007

Debit Amt  USD                  |  71A:SHA

Stamp                Post       |  71F:USD199,

Narrative 100203CY              |  71F:USD15,00

Contra Entry (T-Tfr/TT/D-DD/O-CO|  72: /ACC/(OGB)FBME BANK LTD. NICOSIA 13

Exception/Information Messages: |   //91, CYPRUS

Cr BOA Cust Straigth Thru Thresh|   {5:{MAC:DD19BB62}{CHK:7EF2D043497E}

LCY TT Exceeds Threshold – Appro|

Additional information found for|

  |                             |

  |                             |

  |                             |

  |                             |                          Enter-Exit

F1-Exit  Enter-Next Page  F3-Fir |